602

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE P. RACINE, Plaintiff in Error.

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

LEVISOHN & LEVISOHN, and LOUIS GREENBERG, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

In April, 1935, George P. Racine was tried before a jury in the criminal court of Cook county and found guilty of the crime of receiving stolen property. His motion for

a new trial was allowed, and on his second trial before the court, without a jury, he was again found guilty and sentenced to the penitentiary for an indeterminate term. He now seeks reversal of this judgment by writ of error.

In December, 1932, James Higgins, a retired saloon-keeper, was robbed of a number of stock certificates after four men gained admittance to his home by pretending to be prohibition agents. Two of these stock certificates were for shares of the American Telephone and Telegraph Company, one certificate for three shares and the other for four shares. Racine was a resident of Wilmette but maintained an office in Chicago where he engaged in the real estate, insurance and bond business. At different times for a number of years he had employed a negro named James Riggs for various purposes. Riggs possessed no resources of a tangible nature but called himself a real estate appraiser and adjuster. At about this time the Franklin Mutual Automobile Insurance Company, with an office in Chicago, was having difficulty in meeting certain financial requirements of the insurance department at Springfield. A group composed of Racine, Riggs and others proposed to re-finance and re-organize this company. Each member of the group was required to contribute something, either in money, securities or services. Among the securities gathered together for this purpose were the two above mentioned certificates of telephone stock. Racine was the immediate donor of these certificates. On the trial he said they were Riggs' contribution. In contradiction of this Riggs testified that he did not contribute them; that he did not know at that time of their existence and said they were contributed as the property of Racine. The two certificates were never deposited with the insurance department, as mortgages were substituted for them by a resolution of the board of directors of the re-organized insurance company. Soon after this Riggs became in arrears on his house rent and went to Racine for aid. Riggs said that Racine at first gave him

Studebaker corporation stock certificates, also stolen from Higgins, to put up as a guaranty of rent with the landlord. This the latter denied.

It is first argued that the People failed to prove any loss on the part of Higgins. It was shown that he received new stock certificates to replace the stolen property and had also received dividends on his stock from time to time without loss from the theft. On this account it is claimed that the stock certificates were mere pieces of paper without value and did not represent property in such way as would bring Racine within the statute. This position is untenable. A stock certificate is an instrument of value to the owner, and when taken from him by larceny or robbery the act constitutes a crime. (Smith's Stat. 1935, chap. 38, pars. 387, 501.) The value of the property at the time of the theft or robbery is the determining factor. The crime is not wiped out or lessened in extent if the stolen property subsequently loses value or has been replaced.

The action of the trial court in not withholding judgment until one of defendant's witnesses, J. C. Jones, was produced is also assigned as error. The court admitted all that Racine said Jones would testify to but refused to delay the closing of the trial. Counsel for Racine did not object to this ruling at the time. In view of the concession by the court that Jones would testify in a certain manner if present we can see no resulting harm to Racine. The testimony of Jones would not have changed the result, as Racine admitted that Jones did not see the actual transfer of the stock. Under these circumstances the refusal of the court to delay the termination of the trial was not prejudicial.

Racine also charges that the People failed to prove, beyond a reasonable doubt, that he had any knowledge of the theft of the two certificates when he received them. He does not deny that he possessed the certificates of telephone stock but maintains that they came into his hands

from Riggs without knowledge that they were stolen property. He said Riggs first approached him about participating in the re-organization of the insurance company in the early part of 1933 and delivered the telephone stock to him in May of that year as part of Riggs' contribution to the re-organization. He claims Riggs requested him to have the insurance company records show the stock as property of Racine as Riggs had judgments outstanding against him. At the time of the theft, and also at the time Racine accepted these certificates, each had an assignment blank unfilled and unsigned. After their acceptance by Racine he testified that cash was needed for the purported re-organization of the insurance company, and at the suggestion of Riggs he applied for a bank loan of $1250, with the telephone stock as collateral. The bank required an executed hypothecation of the stock, and Racine gave the required form to Riggs, who returned it executed a few days later in the name of Higgins. Subsequently it was discovered that the signature of Higgins on the purported assignment was a forgery. The bank loan was paid by Racine in November, 1933. On Racine's request Riggs and two others severed their connection with the insurance company and their securities were withdrawn from the assets of the company. It is to be noted, however, that Racine did not return the telephone stock to Riggs when the latter withdrew from the company but retained the same and secured a new loan, with this stock as collateral, for $1200 on November 21, 1933. This second loan was paid by Racine on August 14, 1934, but prior to that time he had been allowed to withdraw the two certificates for seven shares of telephone stock. He testified that he returned all of the certificates to Riggs immediately after the second loan was paid but that Riggs refused to give him a receipt for the certificates.

On cross-examination Racine admitted that his suspicions were aroused when Riggs appeared in his office with

the telephone stock because he knew Riggs was always hard pressed for money. He said Riggs led him to believe the certificates were obtained from an assistant State's attorney who did not own the certificates but had borrowed them. He said he again pressed Riggs for an explanation and was then told that he owned the stock, which ended the matter to his satisfaction. He explained his failure to return the stock certificates to Riggs after the first bank loan was paid in November, 1933, by saying that the certificates were rented for a year. After his arrest Racine told the authorities the certificates were delivered by Riggs to him in the presence of one Lauer, an officer of the insurance company. Lauer was called as a witness and denied that he was present at any delivery of the certificates from Riggs to Racine. After this denial Racine admitted that his statement was not true.

The trial court was fully warranted by the evidence in concluding that Riggs was an accomplice of Racine. Their actions show that they made use of the stolen certificates in such manner as would preclude their apprehension. A damaging circumstance against Racine was his failure to transfer the stock to the insurance company on the books of the American Telephone and Telegraph Company, which action was requested by the insurance department. Instead, the stock certificates were withdrawn by Racine from the assets of the insurance company. These certificates were shown by evidence to have been received by Racine in March, 1933, about three months after the Higgins robbery, and not in May, 1933, as he testified. Under all the evidence the trial judge was justified in believing, beyond a reasonable doubt, that Racine knew the certificates were stolen property or had reasonable belief to that effect. Knowledge of the defendant that property was stolen is seldom susceptible of direct proof but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused concerning the trans-

action.  *People* v. *Grove,* 284 Ill. 429; *People* v. *Boneau,* 327 id. 194.

The defendant objects because the court did not grant his motion for probation.  That was an act of discretion by the trial court which this court does not have the right to review.  *People* v. *Wheeler,* 349 Ill. 230.

The judgment is affirmed.     *Judgment affirmed.*