# STATE v. MARTIN KAHNER.[1, 2]

June 16, 1944.

No. 33,675.

[1]Reported in 15 N. W. (2d) 105.

[2]Certiorari denied by United States Supreme Court November 6, 1944.

[redacted]

*Neil Hughes* and *Robert Greenberg,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *Michael J. Dillon,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for the State.

PETERSON, JUSTICE.

The defendant and one Jacob Garon were charged in an indictment with having attempted on October 14, 1942, "to prevent or dissuade" one Eugene Goulet, who had been duly subpoenaed as a witness for the state, from appearing and giving testimony on October 22, 1942, before the municipal court of the city of Minneapolis upon the trial of a charge against the Minnesota Tavern Corporation, Inc. of having violated a city ordinance by selling to Goulet, a minor, three glasses of nonintoxicating malt liquor (3.2 beer) in its tavern known as the Persian Palms.

The indictment alleged that the prosecution against the tavern corporation was instituted on October 12, 1942, by the filing of a complaint; that on October 13, 1942, a subpoena was issued out of said court summoning Goulet to appear as a witness "on the part of the state" at the trial before said court on October 22, 1942; that on October 14, 1942, the defendant and Garon, well knowing that the complaint had been filed, that the trial was set on the date mentioned, and that Goulet "had been duly subpoenaed to appear" before the court to give evidence and testimony upon the trial, attempted to prevent and dissuade him from attending the trial

pursuant to the subpoena by assisting him to obtain a job or position in a defense plant in the state of California, if he would leave the jurisdiction and absent himself from the trial. The indictment did not allege the date upon which the subpoena was served on Goulet.

A motion to quash the indictment upon the ground that the only evidence received by the grand jury concerning the facts constituting the offense was incompetent, in that it consisted of the testimony of Goulet, who prior to his appearance as a witness before that body had been adjudged insane and had not been restored to capacity. The court denied the motion.

A demurrer to the indictment upon the ground that it did not state facts sufficient to constitute a public offense was overruled. Defendant's claim was that the indictment was faulty because of its failure to give the date of the service of the subpoena upon Goulet.

The defendant, having filed a written waiver of a jury and consent to a trial without a jury, was tried by a judge sitting without a jury. There was no serious dispute concerning the facts that defendant was employed by the tavern company at the Persian Palms; that the prosecution against it was pending in the municipal court of Minneapolis; that Goulet was a necessary and material witness for the prosecution upon the trial of the charge; that he had been subpoenaed as a witness sometime on October 14, 1942; that Garon was the attorney for the corporation in the defense of the charge against it; and that Garon's and defendant's contacts and conversation with Goulet occurred after he had been subpoenaed.

At the beginning of Goulet's examination as a witness at the trial, defendant objected to his competency upon the grounds that he had been adjudged insane and had not been restored to capacity. The court examined him at length to determine his competency as a matter of fact. It had before it the adjudication of the probate court of Goodhue county that he was insane, the commitment under which he was taken to an institution for treatment, and the order releasing him from the institution. There was no evidence that

Goulet had ever been restored to capacity. The court found, as a fact, that he was competent and permitted him to testify. After the court determined that he was competent, but before he testified, defendant offered to show further in support of the claim of Goulet's incompetency to be a witness that Goulet had had several positions since his discharge from the institution; that he had misstated his age to obtain one of those positions; and that he had lied on some other occasions. The court held that these offers went not to his competency but to his credibility, and permitted defendant to show those facts upon Goulet's cross-examination.

The prosecution claimed that a conspiracy existed between Garon and the defendant to persuade Goulet to leave the court's jurisdiction and to absent himself from the trial, and that in order to accomplish their purpose they offered to procure a job for Goulet in a defense plant in the state of California and to provide the transportation and expenses to enable him to go to that state to accept the job. The evidence for the state shows that around noon on October 14 Garon went to Goulet's home in Robbinsdale and talked with Goulet and his father. Garon inquired of Goulet whether he had a brother who was employed on a defense job and asked if he would not like to go to California to take such a job himself. Garon had with him at the time a lawyer who appeared for Goulet when he was charged with drunkenness caused by drinking the so-called nonintoxicating liquor which he purchased at the Persian Palms. Apparently nothing definite resulted from the conversations. Garon requested Goulet to come to his office at about 4:00 that afternoon. Pursuant to the arrangement, Goulet went to Garon's office. When he got there he saw that a "bouncer" employed at the Persian Palms was present. Garon brought up the matter of Goulet's going to California and taking a job in a defense plant. He then told Goulet that a gentleman would be in his office in about 10 or 15 minutes. In about that length of time the defendant appeared. Goulet testified that he was the man referred to. Thereupon defendant informed Goulet that defense jobs were hard to get here but that he (the defendant) could arrange to get him

(Goulet) such a job in the state of California, and that he would arrange for Goulet's transportation and expenses "and everything like that." The arrangements mentioned by Garon while at Goulet's home and by defendant while in Garon's office were for Goulet's immediate departure for California. They had inquired of him whether he had been subpoenaed. Thereupon defendant and Goulet left Garon's office. When they got down on the street near an automobile, one Comstock, who was employed by the county attorney as an investigator, appeared and took Goulet to the courthouse. Before going to Garon's office, Goulet had been to the courthouse, where he gave a statement to an assistant city attorney concerning the purchase of the beer by him at the Persian Palms. The assistant city attorney had arranged with Mr. Comstock to follow Goulet to Garon's office and see what happened. The evidence shows that immediately after Goulet and the defendant left Garon's office a long-distance telephone call was made from Garon's office to a person in Los Angeles, California. There was testimony that, after defendant had been to Garon's office and before the case against the tavern corporation was tried in municipal court and when defendant was arranging to take some employes to Garon's office presumably concerning their testimony in that case, defendant stated that arrangements would be made so that the "punk" would be on the West Coast before the time he was to testify. Before the trial below, Garon had come to his death.

Defendant denied that he had attempted to prevent or dissuade Goulet from appearing as a witness pursuant to the subpoena. He admitted that he and the bouncer were at Garon's office, as claimed by Goulet, and explained his and the bouncer's presence there as being for the purpose of enabling them to "see" whether Goulet was the same young man who "rollerskated" at the Persian Palms and whether they had seen him in the place on the night of the alleged sale to him of nonintoxicating liquor. Defendant also denied that he made any statement that the "punk" would be on the West Coast at the time of the trial in municipal court.

The subpoena for Goulet's attendance at the trial of the charge against the tavern corporation was introduced as an exhibit. It showed that it was issued on October 13, 1942, and that it was served upon Goulet on October 14, 1942. The plain inference is that it was served during the forenoon of the 14th before Garon appeared at Goulet's home in Robbinsdale. Defendant objected to the introduction of evidence of acts and conversations out of his presence concerning what Garon did and what he and Goulet and Goulet's father said. Defendant produced two police officers to testify concerning Goulet's reputation for truth and veracity. They were asked whether they knew what Goulet's reputation for truth and veracity was on or about October 14, 1942, in Robbinsdale, where he lived, and the vicinity. The officers explained that what they knew about Goulet was not based upon his reputation in the community where he lived, but upon their personal knowledge concerning him. Thereupon the court ruled out their testimony as being without proper foundation.

Defendant was convicted and appeals.

On the appeal defendant claims that the court erred (1) in denying his motion to quash the indictment; (2) in overruling his demurrer to the indictment; (3) in determining as a fact that Goulet was competent as a witness notwithstanding the fact that he had been adjudged to be insane and had not been restored to capacity; (4) in receiving testimony of acts and conversations out of defendant's presence concerning what Garon did and what he and Goulet and Goulet's father said; and (5) in excluding the testimony of the two police officers concerning their knowledge of Goulet's reputation for truth and veracity.

■ Wilfully preventing or dissuading a person "who has been duly summoned or subpoenaed as a witness" from attending pursuant to the summons or subpoena is made a gross misdemeanor by Minn. St. 1941, § 613.48 (Mason St. 1927, § 10025). An indictment following the language of the statute is sufficient, the same as in other cases where a statute states the ultimate facts constituting the offense. State v. Danaher, 141 Minn. 490, 169 N. W. 420. In

the instant case, some of the allegations were more expansive than the language of the statute. The one as to the service of the subpoena was simply that Goulet "had been duly subpoenaed to appear" as a witness. Since the allegation is in the language of the statute, it is sufficient. It is only where time is of the essence of the offense, as, for example, where the offense can be committed only by doing a prescribed act on Sunday or during a certain other time, that the time of the act must be alleged and proved as laid. See, 31 C. J., Indictments and Informations, § 454. Otherwise, as· here, time is immaterial. State ex rel. Curry v. Wagener, 145 Minn. 377, 177 N. W. 346. It could make no possible difference to defendant whether the subpoena was served on the 13th or on the morning of the 14th. The important thing was that Goulet had been duly subpoenaed when defendant committed the acts alleged against him.

■ We shall assume, without so deciding, that the motion to quash the indictment properly raises the question that it was based upon the claimed to be incompetent evidence of Goulet. The question of his competency was properly raised at the trial. Under Minn. St. 1941, § 595.02(6), (Mason St. 1927, § 9814[6]), "persons of unsound mind" are incompetent as witnesses. In order to constitute grounds for excluding the witness's testimony, the mental incompetency must exist at the time he is offered as a witness. The determination of the competency of a witness is for the trial court. Where the competency of a witness is challenged upon the ground of unsoundness of mind, the trial court should, as it did here, conduct a preliminary inquiry to enable it to determine the fact of the witness's competency.

If it appears from the inquiry that the witness understands the obligation of an oath and is capable of correctly stating the facts to which his testimony relates, he is competent in fact and should be permitted to testify. State v. Prokosch, 152 Minn. 86, 187 N. W. 971. The competency of a witness depends upon his mental condition when he is offered as a witness and should be determined as of that time. The fact that the witness has been adjudged to be insane and committed to an insane asylum from which he had been

subsequently discharged does not establish as a matter of law his incompetency at the time he is offered as a witness, and, if he is in fact competent at that time, is no ground for excluding his testimony. Ross v. D. M. & I. R. Ry. Co. 203 Minn. 312, 281 N. W. 76, 271; Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164. See, State v. Hayward, 62 Minn. 474, 65 N. W. 63. The fact that the witness had not been restored to capacity (an insane person may be restored to capacity in proceedings under Minn. St. 1941, § 525.61 [Mason St. 1940 Supp. § 8992-143]), is of no importance in this connection. His competency as a witness depended upon his mental capacity at the time he was offered as such. There was no other showing as to Goulet's alleged incompetency when he was a witness before the grand jury. Hence there was no showing requiring a finding that he was incompetent at that time.

■ The other matters which defendant offered to elicit concerning Goulet's unsteady employment record and his untruthfulness went to his credibility and not to his competency. The leave requested to inquire into such matters in determining the witness's competency was therefore properly denied.

■ Everything said, written, or done by a conspirator in execution or furtherance of the common purpose to commit a crime is deemed to be the act of every party to the conspiracy, whether present or absent, and is admissible as evidence against each of them. The combination need not be established by direct proof. No formal agreement to commit the acts charged need be shown. The existence of the combination or conspiracy may be inferred from other facts proved. If the other facts proved show that the defendants, by their acts, pursued the same object, often by the same means, one performing one part and another another part of the same so as to accomplish a common purpose, the existence of the conspiracy is one of fact. State v. Tennyson, 212 Minn. 158, 2 N. W. (2d) 833, 139 A. L. R. 987; State v. Dunn, 140 Minn. 308, 168 N. W. 2. As said in Kelley v. People, 55 N. Y. 565, 576, 14 Am. R. 342, 350: "One party may allure the victim into the den, leaving it to others to effect the robbery, and all will be held equally guilty as con-

federates." Here, the evidence was that Garon and the defendant, by their several acts, worked together to persuade Goulet to leave the state and go to California to accept a job. Defendant's participation therein was direct and, together with the evidence concerning Garon's acts and declarations, establishes the existence of the conspiracy beyond any doubt. Therefore, the trial court properly admitted the evidence of what was said and done by Garon and the others in defendant's absence. The evidence amply sustains the finding of defendant's guilt.

■ The testimony of the police officers which was offered related not to Goulet's reputation in the community but to their own personal opinions concerning him. A witness may testify to the reputation of another witness for truth and veracity, but not as to his moral character. State v. Palmersten, 210 Minn. 476, 299 N. W. 669. As said in Swanson v. Andrus, 84 Minn. 168, 174, 87 N. W. 363, 88 N. W. 252, 253:

"* * * It may be stated as a general rule that where a witness is called to impeach the character of another witness, inquiry cannot be made as to particular facts which tend to discredit his reputation, and that testimony offered for that purpose must be confined to his general reputation for truth and veracity."

In accord is Rudsdill v. Slingerland, 18 Minn. 342 (380).

Affirmed.