LUTHER SKELTON, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.

26 N. W. 2d 378

Filed February 28, 1947.  No. 32154.

*Harry F. Russell,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,*
for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, and WENKE, JJ., and ANKENY,
District Judge.

WENKE, J.

By information filed in the district court for Adams
County, Luther Skelton was charged with the crime of
manslaughter and, also, with unlawfully assaulting Alfred
T. Anderson with intent to inflict great bodily injury.
These charges arose out of the death of Alfred T.
Anderson on or about December 29, 1945.

A jury found the defendant guilty of unlawfully

assaulting Alfred T. Anderson with intent to inflict great bodily injury.

His motion for new trial having been overruled and a sentence imposed that he serve a term of not less than 18 nor more than 36 months at hard labor in the state penitentiary, the defendant, by petition in error, brings the record of his conviction here for review.

For convenience the plaintiff in error will be referred to as the defendant.

Defendant assigns the following as error: The trial court's ruling in permitting three inmates of the Hast-. ings State Hospital to become witnesses and testify; its overruling of his motion for a directed verdict because of the insufficiency of the evidence to sustain the conviction; its overruling of his motion for a directed verdict because of his plain and reasonable defense as a matter of law; and its denial of his application for a parole as provided by statute.

Without reciting in detail the incidents leading up to and resulting in the unfortunate death of Alfred T. Anderson in the early morning of December 29, 1945, while an inmate of the Hastings State Hospital at Ingleside, Nebraska, and a patient in ward 30 thereof, we find it fully sustains the defendant's conviction of unlawfully assaulting Alfred T. Anderson with intent to inflict great bodily injury. In fact, it would support a finding of his guilt on either count.

The assigned error that defendant had a plain and reasonable defense as a matter of law apparently relates to the question of self-defense and that he was at the time acting in the performance of his duties as attendant. Some evidence was introduced as to both issues. They were submitted to the jury by the instructions but determined against the defendant. Under the evidence these issues presented a question of fact for the jury and not one of law for the court. Having been submitted to the jury, the claimed error is without merit.

While not assigned as error the defendant discusses

the admission of Exhibit 2, which is a statement made by defendant in the form of questions and answers and signed by him. He claims this exhibit should not have been received in evidence. The contents thereof relate to the incidents which resulted in the death of Alfred T. Anderson and defendant's connection therewith. We find from the foundation laid for its admission that it was freely and voluntarily made and signed with full knowledge of its contents, and that it was properly received in evidence.

Defendant contends that because of the provisions of section 25-1201, R. S. 1943, the court erred in permitting three inmates of the Hastings State Hospital to become witnesses and testify.

Wray Wycoff, Fred Domeier, and Mike Ortner were inmates of the Hastings State Hospital and patients in ward 30 during the night of December 28 and morning of December 29, 1945. They were permitted to testify as to what they saw and heard of the incident which resulted in the death of Alfred T. Anderson, who was also a patient in the same ward.

Before the witnesses were permitted to testify they were examined by counsel and court as to their understanding of the nature and obligation of an oath and also as to whether or not they were capable of giving a fairly correct account of what each had seen or heard in connection with the subject matter about which they testified. Medical testimony of the doctor in charge was offered on the same subject matter. By the instructions of the court the competency of these witnesses was also submitted to the jury. Their competency at the time of the trial having been passed upon both by the court and jury, and we think correctly, no error arises in permitting them to testify unless it can be said they were incompetent as a matter of law.

The statute above referred to is in part as follows: "Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness

in all cases, civil and criminal, except as otherwise herein declared. The following persons shall be incompetent to testify: (1) Persons of unsound mind at the time of their production; * * *." § 25-1201, R. S. 1943.

It is the thought of the defendant that by their commitment the inmates of our state hospitals are declared to be of unsound mind and remain so as long as they are therein confined and are, therefore, under the provisions of subdivision one of the foregoing statute incompetent to testify as a matter of law. We have apparently never passed upon the question in this jurisdiction but we find many other jurisdictions which have the same or similar statutory provisions that have passed thereon.

As stated in 3 Jones on Evidence, 4th ed., § 723, p. 1300: "Mental defectives are allowed to testify, if they appear to the court to have sufficient understanding to comprehend the nature and obligation of an oath, and to observe and to remember correctly, and to be capable of giving a correct account of, the matter that they have seen or heard, and in reference to which they have been called to testify. The judge' is to determine the competency by examining the witness himself, or upon the testimony of third persons."

This general rule is stated in Pittsburgh & W. Ry. Co. v. Thompson, 82 F. 720, as follows: " 'The general rule, therefore, is that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself and any competent witnesses who can speak to the nature and extent of his insanity.' " See District of Columbia v. Armes, 107 U. S. 519, 27 L. Ed. 618, 2 S. Ct. 840. And in State v. Herring, 268 Mo. 514, 188 S. W. 169, as follows: " * * *

the universal rule at common law, now is that the lunatic may be sworn and may testify as a witness; provided, upon examination by the court (who is the sole judge of his competency, subject to review on appeal for an abuse of discretion) he shows that he understands the nature of an oath and that he possesses mental capacity sufficient to observe and recollect and narrate the things he saw or heard."

In disposing of a similar statutory provision of Ohio the court in Pittsburgh & W. Ry. Co. v. Thompson, *supra,* held:

"Rev. St. Ohio, s. 5240, excepting persons of 'unsound mind' from those who are competent as witnesses, is merely declaratory of the common law, which requires that the unsoundness must be such that the witness is incapable of understanding the nature of an oath or giving a coherent statement touching the matter upon which he is examined."

"The fact that a person has been found insane by the proper tribunal, and is an inmate of an insane asylum, does not make him absolutely incompetent as a witness, but is prima facie evidence of such unsoundness of mind as will disqualify him, and throws the burden of proving competency upon the party offering him. In such case it is proper for the court to hear evidence, including that of the medical men in charge of the asylum of which he is an inmate, as to the character and extent of his mental unsoundness, and to cause him to be examined upon the questions at issue in the suit, in order to determine how far his mind and memory are unbalanced. If it then appears that, while he has a delusion upon one subject, his evidence is clear, coherent, and consistent, there is no error in admitting it, leaving the question of its weight to the jury."

In the case of State v. Herring, *supra,* wherein we find an almost identical situation of fact under a like statute the court, after a lengthy discussion of the sub-

ject and citation of authorities, came to the following conclusion: "From the ruled cases we may deduce the rules: (a) That a person of unsound mind is competent as a witness, if, (1) upon examination he be found to be of sufficient mental capacity to understand the nature of an oath, that is, to know it is both a moral and a legal wrong to swear falsely, and that false swearing is a punishable crime in law, and (2) if he be possessed of sufficient mind and memory to observe, recollect and narrate the things he saw or heard; (b) that lawful confinement in an asylum for the insane, or an adjudication as an insane person, creates a prima-facie presumption of absolute incompetency as a witness; but (c) such presumption is rebuttable by the *voir dire* examination of the witness alone, or when aided by extrinsic evidence, and (d) the burden of rebutting the presumption of incompetency in case of confinement in an asylum or adjudication as an insane person is on him who offers the witness; but (e) that absent such confinement, or adjudication as an insane person, the burden of showing incompetency on account of unsoundness of mind is on him who objects on that ground."

We find this principle is universally supported by the holdings of other jurisdictions under like or similar statutes. In fact we have not found a contrary holding nor has any been called to our attention.

We think a mentally defective person is competent to testify as a witness if he has sufficient mental capacity to understand the nature and obligation of an oath and is possessed of sufficient mind and memory to observe, recollect, and narrate the things he has seen or heard. If he has been committed to a state hospital and is an inmate thereof, then there arises a prima facie presumption that he is incompetent as a witness. However, such presumption is rebuttable by the voir dire examination of the witness alone or if aided by extrinsic evidence. The burden of rebutting the presumption

of incompetency is on whoever offers him as a witness. See 7 A. L. R. 606; 68 A. L. R. 1319; State v. Kahner, 217 Minn. 574, 15 N. W. 2d 105; State v. Braden, 56 Ohio App. 19, 9 N. E. 2d 999; State v. Wildman, 145 Ohio St. 379, 61 N. E. 2d 790; In re Fink's Estate, 343 Pa. 65, 21 A. 2d 883.

As stated in State v. Meyers, 46 Neb. 152, 64 N. W. 697: "Section 328, Code Civil Procedure, provides: 'Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared. The following persons shall be incompetent to testify: First—Persons of unsound mind at the time of their production,' etc. The competency of a person to testify as a witness concerning the matter in issue is, in the first instance, a question for the court, and whereas, in the case at bar, the presiding judge has seen and personally examined the proposed witness, all presumptions are in favor of the correctness of his finding. As said by NORVAL, J., in *Davis v. State,* 31 Neb., 248: 'The question of competency of a person to be a witness must be left to the sound legal discretion of the trial judge, leaving to the jury to determine the credit that ought to be given to the testimony.' "

Defendant, under the provisions of sections 29-2217 and 29-2218, R. S. 1943, made application to the trial court, after his conviction but before sentence, asking for an order, without pronouncing sentence, suspending further proceedings, and placing the defendant on probation under the charge and supervision of a probation officer or other suitable person. Hearing was had on the application and evidence offered in support thereof. The court denied the application and pronounced sentence. The defendant here seeks to have reviewed the court's order denying the application.

In construing these statutory provisions we have said: "In a criminal prosecution, after guilt of defendant has been legally established and subject to conditions pre-

scribed by statute, 'the court may, in its discretion, enter an order, without pronouncing sentence, suspending further proceedings and placing the accused on probation.' Comp. St. 1929, sec. 29-2214." Moore v. State, 125 Neb. 565, 251 N. W. 117. See Sellers v. State, 105 Neb. 748, 181 N. W. 862.

Apparently we have never passed on the question of whether or not the trial court's refusal to place the defendant on probation can be brought here for review.

In our judgment the act does not contemplate that requests to be put on probation should be the subject of formal applications, hearings, and orders but rather that the power is to be exercised by the court upon its own motion. The exercise of the power is plainly and purely discretionary with the trial court.

While, as here, a hearing may be had and evidence received, it is solely for the benefit of the trial court to aid it in determining whether or not it should exercise the power and place the defendant on probation. We think, as stated in The People v. Racine, 1 N. E. 2d 63 (362 Ill. 602): "Trial court's action on motion for probation is discretionary and not reviewable by Supreme Court."

To the same effect under similar statutes are People v. Dunlop, 27 Cal. App. 460, 150 P. 389; People v. Laborwits, 74 Cal. App. 401, 240 P. 802; Stanley v. State, 171 Tenn. 406, 104 S. W. 2d 819; Evans v. District Judge, 12 F. 2d 64.

From an examination of the record we find that the defendant has had a fair trial and that, in view of the facts as disclosed therein, the sentence is not excessive. The conviction and sentence are therefore affirmed.

AFFIRMED.