[No. 32357. Department One. July 29, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. THEODORE E. MOORISON, *Appellant*.[1]

[1]Reported in 259 P. (2d) 1105.

*Aurel M. Kelly*, for appellant.

*Murray E. Taggart, Herbert H. Freise*, and *Vaughn Hubbard*, for respondent.

HILL, J.—The principal question presented by this appeal is the competency of a witness who previously had been adjudged insane.

Appellant Theodore E. Moorison was charged with assault in the second degree upon the person of his wife, and was convicted of assault in the third degree.

The defendant, appellant here, filed a motion June 13, 1952, for a continuance to the next ensuing jury term, on the ground that "documentary evidence material and vital" to the defense could not be secured by June 25, 1952, the trial date. It appeared in the affidavit filed in support of the motion and in the argument on the motion that, on October 19, 1942, a county court in Colorado had adjudged Nina Moorison, then Nina Anderson, to be insane, and had committed her to the Colorado State Hospital; that shortly thereafter, November 5, 1942, the order of commitment (but not the adjudication of insanity) was vacated and an order was entered committing her to the custody of her then husband, Jess Anderson; and it was believed that it would be possible to obtain the record of the commitment hearing if the time was extended to permit a search of certain vaults where the record was believed to be stored.

The motion for continuance having been denied June 16, 1952, counsel for the defendant on the following day made an oral motion for an order requiring the county of Walla Walla to pay the expenses of taking depositions of the persons in charge of the court records and the hospital records having to do with Nina Moorison's commitment in Colorado in 1942. During the course of the argument on this oral motion, counsel renewed the motion for a continuance. The

court denied the motion to have depositions taken at county expense and adhered to its former denial of a continuance.

At the trial, the state offered Nina Moorison as its first witness. The defendant took the position that she was not a competent witness under RCW 5.60.050 [cf. Rem. Rev. Stat., § 1213], which in so far as here material reads as follows:

"The following persons shall not be competent to testify:
"(1) Those who are of unsound mind, or intoxicated at the time of their production for examination; . . ."

Certified copies of both orders by the Colorado court and of a letter dated October 18, 1942, written on the letterhead of the University of Colorado School of Medicine and Hospitals and signed by Robert W. Davis, M. D., resident psychiatrist, stating, *inter alia*, that "Mrs. Anderson was admitted to this Hospital 9/28/42, suffering from a paranoid condition," were brought to the attention of the trial court.

The prosecuting attorney stated that, as part of the state's case, a doctor would testify that Nina Moorison was sane.

The trial court did not at that time make an express ruling on Nina Moorison's competency, but said: "I am ruling that the witness can be sworn and testify. He [the prosecuting attorney] has offered to rebut this record." This ruling was excepted to, but it was not then suggested that all the evidence on the issue of competency should be taken prior to receiving the witness's testimony.

At the conclusion of Nina Moorison's testimony, the defendant moved that it be stricken for the reason that she was not a competent witness. The motion was denied.

When called as a witness during the presentation of the state's case, the doctor who had been treating the challenged witness prior to the assault and who took care of her injuries after the assault, testified that in his opinion she was sane during his acquaintance with her, a period of about a year and a half.

The motion that Nina Moorison's testimony be stricken was renewed at the conclusion of the state's case and again denied. It was renewed again after both sides had rested, and the trial court stated that she appeared "to be in full

possession of her mental faculties." Then occurred the following colloquy:

"MRS. KELLY: You are ruling she is competent to testify? THE COURT: She can testify and her testimony will stand. MRS. KELLY: You are ruling that she is competent to testify? THE COURT: Yes."

In eleven assignments of error, appellant argues ably and vigorously that, under RCW 5.60.050, a person who has been adjudged insane cannot be competent to testify until it has been adjudicated that he has been restored to mental competency.

Under the rules of the early common law, a person who had been adjudged insane was absolutely incompetent as a witness. The rigor of that rule has been modified in consequence of an evolution in juristic thinking and progress in public understanding of mental derangements. *State v. Wildman*, 145 Ohio St. 379, 61 N. E. (2d) 790 (1945); *State v. Wrosch*, 262 Wis. 104, 53 N. W. (2d) 779 (1952); 2 Wigmore on Evidence (3d ed.) 583, § 492; 58 Am. Jur. 92, Witnesses, § 118.

■ The generally recognized common-law rule now is that an insane person is competent to testify if at the time of his presentation as a witness he understands the nature of an oath and is capable of giving a correct account of what he has seen and heard. *District of Columbia v. Armes*, 107 U. S. 519, 27 L. Ed. 618, 2 S. Ct. 840 (1883); *Lockard v. Parker*, 164 F. (2d) 804 (1947); *Shupp v. Farrar*, 85 Ohio App. 366, 88 N. E. (2d) 924 (1949); annotations, 26 A. L. R. 1491, 148 A. L. R. 1140. And this is the rule even though there has been a formal adjudication of insanity. See cases cited *infra*. An excellent explanation of the rationale of the rule is to be found in Mr. Justice Field's opinion in *District of Columbia v. Armes, supra.*

■ It is the appellant's contention that our statute hereinabove quoted changes the common-law rule and renders incompetent as a witness any person who has been adjudged to be mentally incompetent or insane, until there has been an adjudication of restoration to mental competency.

This specific question has not heretofore been presented to this court. In several cases we have upheld the action of the trial court in permitting persons claimed to be incompetent to testify, but in some of those cases we have made reference to the fact that the witness had not been adjudged to be mentally incompetent or insane. *Czarecki v. Seattle & San Francisco R. & Nav. Co.*, 30 Wash. 288, 70 Pac. 750 (1902); *State v. McMullen,* 142 Wash. 7, 252 Pac. 108 (1927); *State v. Hardung,* 161 Wash. 379, 297 Pac. 167 (1931); *Sumerlin v. Department of Labor & Industries,* 8 Wn. (2d) 43, 111 P. (2d) 603 (1941). However, this specific question has been passed upon in other states having similar statutes and uniformly such statutes have been held to be but declaratory of the common law. We shall confine our citations and quotations to those states having statutes comparable to our own. For a more complete listing of authorities on this point, see 26 A. L. R. 1499, 148 A. L. R. 1147.

In *Skelton v. State,* 148 Neb. 30, 26 N. W. (2d) 378 (1947), the defendant, a guard at a state mental hospital, was convicted of an assault upon one of the inmates. Three of the witnesses against him were likewise inmates of the institution. The Nebraska statute, so far as material, read:

" 'The following persons shall be incompetent to testify: (1) Persons of unsound mind at the time of their production; . . .' § 25-1201, R. S. 1943."

The supreme court of Nebraska stated the position of the defendant in these words:

"It is the thought of the defendant that by their commitment the inmates of our state hospitals are declared to be of unsound mind and remain so as long as they are therein confined and are, therefore, under the provisions of subdivision one of the foregoing statute incompetent to testify as a matter of law."

The court's holding, as stated in the syllabus prepared by the court, was as follows:

"1. Witnesses. A mentally defective person is competent to testify as a witness if he has sufficient mental capacity to understand the nature and obligation of an oath and possessed of sufficient mind and memory to observe, recollect,

and narrate the things he has seen or heard. If he has been committed to a state hospital and is an inmate thereof then there arises a prima facie presumption that he is incompetent as a witness. However, such presumption is rebuttable by the voir dire examination of the witness alone or aided by extrinsic evidence. The burden of rebutting the presumption of incompetency is on whoever offers him as a witness.

"2. The question of competency of a person to be a witness is left to the sound discretion of the trial judge, leaving to the jury to determine the credit that ought to be given to the testimony."

In *State v. Herring,* 268 Mo. 514, 188 S. W. 169 (1916), the conviction of one of the attendants at an insane asylum for the murder of a patient was affirmed. The Missouri statute provided:

" 'The following persons shall be incompetent to testify: First, *a person of unsound mind at the time of his production for examination,'* etc. [Sec. 6362, R. S. 1909.]"

In passing upon the competency of a witness who had been adjudged insane and committed to the asylum, the supreme court of Missouri, after an exhaustive review of the authorities at common law and in other states having similar statutes, set out its conclusions with admirable brevity and clarity in these words:

"From the ruled cases we may deduce the rules: (a) That a person of unsound mind is competent as a witness, if, (1) upon examination he be found to be of sufficient mental capacity to understand the nature of an oath, that is, to know it is both a moral and a legal wrong to swear falsely, and that false swearing is a punishable crime in law, and (2) if he be possessed of sufficient mind and memory to observe, recollect and narrate the things he saw or heard; (b) that lawful confinement in an asylum for the insane, or an adjudication as an insane person, creates a prima facie presumption of absolute incompetency as a witness; but (c) such presumption is rebuttable by the *voir dire* examination of the witness alone, or when aided by extrinsic evidence, and (d) the burden of rebutting the presumption of incompetency in case of confinement in an asylum or adjudication as an insane person is on him who offers the witness; but (e) that absent such confinement, or adjudication

as an insane person, the burden of showing incompetency on account of unsoundness of mind is on him who objects on that ground."

Our own survey of the authorities, particularly those subsequent to the decision in *State v. Herring, supra*, satisfies us that the statement of the court in that case represents a concise summary of the law in jurisdictions having statutes similar to ours.

One of the more recent decisions (*State v. Kahner*, 217 Minn. 574, 15 N. W. (2d) 105 (1944)) construes the Minnesota statute, which provided:

"Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows: . . .

"(6) Persons of unsound mind; persons intoxicated at the time of their production for examination, and children . . . " 38 Minn. Stat. (Anno.) 306, § 595.02 (6).

(It will be noted that in the Minnesota statute there is a semicolon after "unsound mind," and the words "at the time of their production for examination" clearly apply only to "persons intoxicated," as would seem to be the case in our own statute.)

In *State v. Kahner, supra*, the witness whose competency was challenged had been adjudged insane and there had been, as here, an order releasing him from the institution to which he had been committed; but, as here, there was no showing that an order had ever been entered restoring him to competency, although the Minnesota statute sets out a procedure therefor, as does ours. The court there answered most of the contentions made by the appellant here, with this statement:

"Under Minn. St. 1941, § 595.02 (6), (Mason St. 1927, § 9814[6]), 'persons of unsound mind' are incompetent as witnesses. In order to constitute grounds for excluding the witness's testimony, the mental incompetency must exist at the time he is offered as a witness. The determination of the competency of a witness is for the trial court. Where the competency of a witness is challenged upon the ground of unsoundness of mind, the trial court should, as it did here,

conduct a preliminary inquiry to enable it to determine the fact of the witness's competency.

"If it appears from the inquiry that the witness understands the obligation of an oath and is capable of correctly stating the facts to which his testimony relates, he is competent in fact and should be permitted to testify. *State v. Prokosch,* 152 Minn. 86, 187 N. W. 971. The competency of a witness depends upon his mental condition when he is offered as a witness and should be determined as of that time. The fact that the witness has been adjudged to be insane and committed to an insane asylum from which he had been subsequently discharged does not establish as a matter of law his incompetency at the time he is offered as a witness, and, if he is in fact competent at that time, is no ground for excluding his testimony. *Ross v. D. M. & I. R. Ry. Co.,* 203 Minn. 312, 281 N. W. 76, 271; *Cannady v. Lynch,* 27 Minn. 435, 8 N. W. 164. See, *State v. Hayward,* 62 Minn. 474, 65 N. W. 63. The fact that the witness had not been restored to capacity (an insane person may be restored to capacity in proceedings under Minn. St. 1941, § 525.61 [Mason St. 1940 Supp. § 8992-143]), is of no importance in this connection. His competency as a witness depended upon his mental capacity at the time he was offered as such."

■ Because of the adjudication of insanity, the burden was upon the state to satisfy the trial court that Nina Moorison was a competent witness. If there was any doubt in the mind of the court as to her competency, the evidence bearing on that issue, including an examination of the witness, might well have been heard in the absence of the jury before she was permitted to testify. However, the necessity or desirability of such a procedure was not suggested to the trial court.

■ While several of the cases cited and some from which we have quoted indicate that the issue of the competency of a challenged witness should be determined after a hearing on that issue before the witness testifies, it is not necessarily prejudicial error, especially when there is no insistence upon such a hearing, to permit the witness to testify and to withhold the final determination of the question of competency until the witness has testified or until all the

evidence is in. *Flannery v. State*, 153 Tex. Crim. App. 36, 216 S. W. (2d) 980 (1949).

In the *Flannery* case, the appellant had possession of the money and jewels of an elderly woman, and he was convicted of "theft by false pretext." When the complaining witness was called, her competency was challenged and the appellant presented evidence that about two weeks prior to the time she was called to testify she had been adjudicated to be a person of unsound mind and a guardian had been appointed. In addition, the appellant offered *ex parte* affidavits of two doctors, specialists in neuropsychiatry, one a professor at the University of Texas Medical School and the other assistant director of the state psychopathic hospital. From these affidavits it appeared that at the time the doctors examined her, the complaining witness was

" ' . . . suffering from a psychosis with cerebral areriosclerosis or hardening of the arteries to the brain, high blood pressure and softening of small areas in the brain due to the aforementioned condition.' "

Continuing, each affidavit stated:

" 'In my opinion she is mentally incompetent at this time and from the advanced stage of her condition, she has been incompetent for the past three or four years.' "

The trial court permitted the complaining witness to testify and held that she gave an intelligent and understandable account of the events and was a competent witness under the Texas statute, which was as follows:

"All persons are competent to testify in Criminal Cases except the following:

"1. Insane persons who are in an insane condition of mind at the time when they are offered as a witness, or who were in that condition when the events happened of which they are called to testify . . ." 2 Tex. Crim. Stat. 960, Art. 708.

The appellate court said:

"It probably would have been more orderly had the trial judge examined the witness on voir dire to test her competency before permitting her to testify before the jury. After

all, the question of the witness' competency was a matter for the court to determine. . . .

"If the trial judge, in the absence of the jury, had heard the witness recite the facts, and then held her competent to testify, and the witness had then related the same facts before the jury, we would arrive at precisely the same place we find ourselves."

There can be no question that if, on the other hand, a trial court were to determine, as the result of a *voir dire* hearing, that a witness was competent to testify, the court could later order all the testimony of the witness stricken and instruct the jury to disregard it, if the conduct of the witness during the course of his examination or cross-examination convinced the court that it had been mistaken in its initial ruling and that the witness was in fact incompetent.

▇ Here, the trial court had an opportunity to observe the condition and demeanor of the witness while on the stand, and had the testimony of a physician as to her sanity at the time of the assault concerning which she testified and at the time of the trial. We cannot say, from our examination of the record, that the presumption resulting from the 1942 adjudication of insanity was not overcome or that the trial court abused its discretion in holding that Nina Moorison had sufficient mental capacity to testify; indeed, it would seem to be difficult to justify a contrary conclusion. In so stating, we have in mind appellant's contention that Nina Moorison was a paranoiac; the supreme court of Alabama has said: "A paranoiac is insane, but competent to testify, we doubt not, in many instances." *Redwine v. State*, 61 So. (2d) (Ala.) 724 (1952).

▇ Our conclusion in the present case is that Nina Moorison, having been adjudged insane by order of the Colorado court, did not have to be adjudged sane in a proceeding instituted for that purpose in order to be competent as a witness. Her competency as a witness depended upon her mental capacity at the time of the events concerning which she was to testify (2 Wigmore on Evidence (3d ed.) 586, § 492) and at the time she was offered as a witness.

■ The authorities are in almost complete accord that competency is to be determined by the trial court and credibility by the jury. As stated in *Saucier v. State*, 235 S. W. (2d) (Tex. Crim. App.) 903 (1950):

"The competency of the witness was for the court.

"However, the credibility of the witness, and the weight to be given his testimony was for the jury. And upon this question, appellant had the right to offer evidence before the jury as to his insanity or the extent of his impairment of mind, and to fully cross-examine the witness upon the character of his commitment."

■ The copies of the orders of the county court in Colorado and of the letter heretofore referred to were admitted in evidence during Nina Moorison's cross-examination, so that the jury had before it the facts that she had been adjudicated insane some ten years before and that there had been no subsequent adjudication of restored competency, which it was entitled to consider as bearing upon her credibility. *Bonner v. State*, 59 Ga. App. 737, 1 S. E. (2d) .768 (1939); *Shupp v. Farrar*, 85 Ohio App. 366, 88 N. E. (2d) 924 (1949).

■ The appellant assigns as errors the refusal of the trial court to grant a continuance to the next ensuing jury term, to enable appellant to get further evidence from the Colorado State Hospital bearing upon Nina Moorison's mental condition in 1942, and the denial of his oral motion for an order requiring Walla Walla county to pay the expenses of taking depositions in Colorado for the same purpose. Neither the request for continuance nor the motion to take depositions at county expense seems to have been timely made. (For dates, see second and third paragraphs of this opinion.) In any event, the trial court was fully justified in considering that it was not necessary to ascertain what had happened in Colorado in 1942 to be able to determine whether Nina Moorison (who had lived in Walla Walla, Washington, for more than nine years immediately preceding the trial) was competent to be a witness in a trial in that community in 1952. There was no abuse of discretion

in denying either the continuance or the motion to take depositions at county expense.

 The final assignment of error to be considered is the refusal of the trial court to order the preparation by the court reporter of a transcript of testimony and other proceedings (generally referred to as a statement of facts) at the expense of the county.

Our statute, RCW 2.32.240 [*cf.* Rem. Supp. 1943, § 42-5], provides that on a showing by the defendant in a criminal action that he does not have the financial ability to pay for such a transcript, the judge presiding, " . . . if in his opinion justice will thereby be promoted, . . . " may have the transcript prepared at county expense. The legislature, realizing the impossibility of precisely circumscribing the ideal of the "promotion of justice," has left the determination of what will accomplish that purpose to the discretion of the trial judge. *State ex rel. Bird v. Superior Court,* 30 Wn. (2d) 785, 194 P. (2d) 374 (1948). We find no abuse of that discretion. Appellant's brief states that the basic issue is one of law, which it seems to us could have been adequately presented on stipulated facts without the expense of the transcription of the court reporter's notes. In any event, the appellant was not prejudiced by the court's refusal to have a statement of facts prepared at county expense, inasmuch as a statement of facts has been filed herein.

The judgment and sentence from which the appeal was taken is affirmed.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.