O’NIELL, Chief Justice.
 

 The appellant stands convicted of murder and sentenced to pay the penalty of death. The record contains six bills of exception, reserved to rulings made during the trial.
 

 The first bill of exception has reference to the reading of the indictment to the jury, by the assistant district attorney who had charge of the prosecution. The indictment contained two counts. In the first count, this defendant, Willie Walton, was accused of the murder of a man named Roy Landry; and in the second count, Sidney Mitchell was
 
 *1009
 
 accused of being an accessory before the fact, by procuring and inciting Willie Walton to murder Boy Landry. Sidney Mitchell was tried and convicted a few months after the crime was committed — the verdict being guilty without capital punishment- — and he was sent to the penitentiary to serve a life sentence. Meanwhile, Willie Walton had left New Orleans, where the crime was committed. He was arrested in. Memphis and brought back to New Orleans for trial more than a year and a half after the crime was committed. At the beginning of the trial, when the assistant district attorney read the indictment to the jury, he omitted the second count, charging Sidney Mitchell with being an accessory before the fact. Willie Walton’s attorney insisted that both counts in the indictment, and the indorsements on it, showing that Sidney Mitchell had been found guilty without capital punishment, should be read to the jury. The judge complied with the attorney’s request, by instructing the assistant district attorney to read to the jury all of the indictment, and the indorsements on it, and the assistant district attorney, of course, obeyed the judge’s instruction ; but the judge, at the same time, instructed the jurors that all that they had to consider was the charge made in the first count in the indictment, for which Willie Walton alone was on trial. The attorney took exception to the judge’s so instructing the jury. The exception is not well founded. The attorney for Willie Walton informs us that his idea in having the second count in the indictment and the indorsements on it read to the jury, and in having the jury thus informed that Sidney Mitchell had been found guilty without capital punishment, was that the jury might be thus induced to spare the life of Willie Walton, by finding him guilty without capital punishment. The judge’s reminding the jurors that they were concerned only with the charge against Willie Walton was an appropriate reminder, or instruction, and was not suggestive of the verdict to be rendered as to Willie Walton. The judge’s instruction, therefore, was not essentially prejudicial to Willie Walton, then on trial.
 

 The second bill of exception was reserved to the overruling of an objection made by the attorney for Walton to the testimony of John Bauman, a witness for the state, relating a conversation that both Willie Walton and Sidney-Mitchell had with Bauman, two or three hours before the murder was committed, in which conversation Walton and Mitchell sought to induce Bauman to join them in a conspiracy to murder Landry and rob him of a wagonload of potatoes. The attorney for Walton objected to the introduction of testimony to prove a conspiracy between Walton and Mitchell, on the ground that the indictment did not charge that there was a conspiracy between them. Our opinion, however, is that an indictment which charges one man with the commission of a' crime and another with being an accessory before the fact, by procuring and inciting the perpetrator to commit the crime, charges, substantially, that the two conspired to commit the crime; and, under such an indictment, a conversation had between the áecused parties, expressing an intention to
 
 *1011
 
 commit the crime, is admissible in evidence against either or both of them. A conspiracy on the part of two or more persons to commit a crime, for which only one of them is on trial, is admissible in evidence against the party on trial, even though a conspiracy is not charged in the indictment. 16 C. J. 545, § 1039. The ruling complained of was correct.
 

 The third bill of exception was reserved to the overruling of an objection made by Walton’s attorney to a question propounded by the assistant district attorney to Joseph Sanville, a witness for the state, who testified that he met Sidney Mitchell on the morning of the killing, about two hours before the killing; that Mitchell was walking behind a wagonload of potatoes, on which Willie Walton and an unknown white man were riding; that he (Sanville) walked along with Mitchell until the wagon turned out of their view; that he (Sanville) and Mitchell stopped and bought two bags of peanuts. Here the assistant district attorney asked the question which was objected to, viz.: “And then what did yon do?” The objection, as recorded, was that what the witness and Sidney Mitchell did was “absolutely inadmissible.” We assume that the word “inadmissible” should read “irrelevant.” The testimony which Sanville gave, however, after the objection was overruled, was relevant and important, and hence admissible, because it accounted for the movements of both Walton and Mitchell immediately before and after the murdering of Landry — who was the man on the wagon with Walton. Sanville testified that, after the wagon disappeared around a turn in the road, he and Mitchell went to a nearby farm and began knocking down pecans from the trees; that Mitchell soon left him and went in the direction in which the wagon had gone, with Landry and Walton and the load of potatoes belonging to Landry; and that, about an hour or a little longer afterwards, the wagon returned with Walton and Mitchell on it, and with the load of potatoes, but without Landry. His dead body, with the unmistakable evidence of his having been murdered, was found three days afterwards, in a secluded spot, in or near the woods, .near the roadside, in the direction in which the wagon had taken Landry and Walton and Landry’s potatoes, and from which the wagon had returned with Walton and Mitchell and the load of potatoes, but without Landry. The witness San-ville mounted the wagon and rode to town with Walton and Mitchell, who proceeded to peddle the potatoes. That, in substance, is what Sanville testified to after the objection to his testimony was overruled. The objection was not well founded.
 

 The fourth bill of exception was reserved to the judge’s sustaining an objection made by the assistant district attorney, to a question propounded by the attorney for the defendant, cross-examining a witness for the-state, a detective named John Barker. He testified that he and another detective, Fred Weber, brought Walton back from Memphis to New Orleans, as a prisoner, accused of the murder of Landry, and that, on the night of their arrival in New Orleans, about 11 o’clock, Walton freely confessed the crime and went willingly with him (Barker) and de
 
 *1013
 
 tective Weber, and the chief of detectives, over the route over which he (Walton) had traveled with Landry on the wagonload of potatoes, to the place where the murder was committed. The question which the attorney for Walton asked Barker, and which the assistant district attorney objected to, on the ground that the answer sought was merely a matter of opinion and of argument, was whether it had struck the witness as being rather remarkable, if not impossible, for a negro to offer to go and show the detectives the scene of the crime, at 11 o’clock at night, after traveling five hundred miles in an automobile. The question which was asked the detective, and which was objected to and forbidden, was merely a matter of argument. The ruling, therefore, sustaining the objection to the question, was not wrong; and it was not harmful, because the attorney for the defendant was allowed much freedom in his cross-examination of the detectives Barker and Weber, and the chief of detectives, Grosch. Questions which serve only as means of .argument ought to be omitted, even on cross-examination. Underhill on Criminal Evidence (3d Ed.) p. 499, § 354.
 

 The fifth bill of exception was reserved to the overruling of the objection of the attorney for the defendant to the introduction in evidence of a written confession, dictated by Walton, and taken down stenographically, in the presence of the chief of detectives, Grosch, and detectives Barker and Weber, immediately after Walton had shown them the route which he had taken to the place of the crime, on the night of his return to New Orleans, under arrest. The
 
 only
 
 objection made to the offering in evidence of the typewritten document, which was signed by Walton, was that the three detectives testified that Walton read the document before he signed it; and Walton testified that he could not read, and .could write only his name; and in that he was
 
 corroborated, to some extent,
 
 by the testimony of a woman, school teacher, who had undertaken to teach him, and by the record of his having attended school only sixty days, when he was only eight years of age. We are inclined to the belief — although there is some doubt about it — that Walton could not read. But, whether he actually read the confession, or seemed or pretended to read it, before he signed it, is a matter of no importance, because it is not denied that the confession was read to him before he signed it; nor does he deny that the confer sion, as written, which he repeated, substantially, but verbally, to the assistant district attorney, was a free and voluntary confession. There is no reason to doubt that the detectives believed that Walton could and did read the typewritten confession, which was first read to him and then handed to him to be read by him and signed. The mistake of the detectives, if they were mistaken, in believing that Walton read the confession before signing it, should not render the document inadmissible as evidence against him, because the proof is conclusive, and is not denied, that he dictated the confession, freely and voluntarily and without any undue influence or inducement whatever, and that it was read to him, as it had been dictated, and, after being so read to him, was signed by him, freely and voluntarily and without
 
 *1015
 
 any undue influence or inducement whatever. The confession, therefore, was admissible in evidence.
 

 The sixth bill of exception was reserved to the overruling of a motion for a new trial. The ground set up in the motion was that the judge took an active part in the prosecution, and that the jury was thereby prejudiced against the defendant. The specifications in the motion, as to how the judge took an active part in the prosecution, were twofold, viz.: First, that after the chief of detectives, John Grosch, had testified, as a witness for the state, in laying the foundation for the introduction in evidence of the confessions made by Walton, and after Grosch had left the courtroom, he was twice recalled to the witness stand by the judge, and twice questioned by the judge, at considerable length and in such minute detail as to bring out unfavorable statements of fact which had not been brought out or referred to in the examination of the witness by the assistant district attorney having charge of the prosecution; and, second, that after the defendant, Walton, had testified in the case and had been cross-examined by the district attorney, the judge ordered the defendant to try on a cap which had been found near the dead body of Landry, at the scene of the murder, and which had been offered in evidence by the assistant district attorney ; that the ownership of the cap was a matter of great importance, and was denied by Walton; and that the judge, by having Walton to try on the cap, in the presence of the jury, and by questioning him as to whether the cap fitted his head, compelled him to give evidence against himself.
 

 If the matters complained of in the motion for a new trial had been objected to by Walton or his attorney at the proper time, when the judge recalled or was questioning the chief of detectives as a witness, or when the judge questioned Walton, as a witness, with regard to how he was dressed on the day the murder was committed, and as to whether the cap which was found at the scene of the murder fitted Walton’s head — and if the judge had overruled such an objection to his questioning the witnesses — the complaint of the appellant would be well founded. But no objection whatever was made to the judge’s recalling or questioning the chief of detectives as a witness, or to the judge’s questioning Walton as a witness, until the complaint was made in the motion for a new trial. Objections to testimony, or to the method of introducing the testimony, in a criminal prosecution, must be urged when the testimony is introduced, otherwise the objections will be presumed to be waived; for they are not available when made for the first time in a motion for a new trial. We have no reason to doubt that the judge .who presided at the trial of this case would have yielded immediately if the attorney for Walton had made or manifested any objection to the judge’s recalling or questioning the chief of detectives as a witness, or to the judge’s questioning the defendant as a witness — particularly as to whether the telltale cap fitted his head. The judge did not order the defendant to try on the cap, as alleged in the motion for a new trial. When the assistant district attorney had come to the end of his cross-examination of the defendant, without having asked whether the cap fitted
 
 *1017
 
 him, the judge asked the defendant how he was dressed on the date of the disappearance of Landry; and the defendant replied, after describing his pants and suspenders, “and I had on a checker cap.” The judge said: “You saw that cap they had in court this morning?” The assistant district attorney then picked up the cap and handed it to Walton, who, with the cap in his hand, replied: “Yes, sir, I seen it.” The judge asked: “Is that your cap?” To which Walton replied: “No, sir, it is not.” The judge asked Walton if the cap fitted him, and he responded by trying on the cap, and saying: “I don’t know if it fits or not; I have to look in the glass to see if it fits."’ Then the judge asked: “Does it feel like it fits?” To which Walton replied: “It feels like it is going to fall down on my head.” Thereupon the assistant district attorney asked Walton to step down and let the jury see whether the cap fitted him, and asked him to show how he wore a cap. And the demonstration was ended then by Walton’s saying: “I hold it down on my head.” It is said in the statement per curiam, annexed to the bill of exception, that the cap was much too small for Walton; that the purpose of the judge in continuing to question Walton was to show the misfit, which was,'of course, favorable to Walton’s defense. All of that, however, is not so important as is the fact that all that was said and done in the judge’s questioning of Walton as a witness was with the tacit approval of Walton and his attorney.
 

 Having found no error in the proceedings complained of, we must do our painful duty.
 

 The verdict and sentence are affirmed.