[No. 38001. Department One. October 28, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES JOSEPH ALLEN, *Appellant*.*

*Reported in 406 P.2d 950.

*Jack Steinberg,* for appellant.

*Charles O. Carroll* and *Edwin S. Stone,* for respondent.

HILL, J.—This is a case of a man (James Joseph Allen) who, almost two years after a burglary had been committed, went to the police station and made a full and detailed confession. The officer then wrote out the confession, and the man, after reading it to the officer, signed it willingly. (Investigation showed a close correlation between the confession and the report of the burglary in the police records.)

This would seem to set a record for voluntariness, and preclude all questions as to the admissibility of the confession. However, after a charge of second-degree burglary was filed against the man making the confession, he repudiated it and entered a plea of not guilty. His contention was that the confession was not voluntary because he was mentally incompetent at the time it was made.

At the trial, the jury found him "guilty," and the case is before us on an appeal from the judgment and sentence entered on that verdict.

The principal issue at the trial, and before this court, was the admissibility of the confession and the weight to be given to the confession if admitted.

The issue of admissibility was presented to the trial court in the absence of the jury, as our rules provide (Rule of Pleading, Practice and Procedure 101.20W). There was no contention of duress or overreaching in any way. The confession was entirely voluntary so far as the state was concerned; and, as indicated, the contention of the defense was that the defendant was mentally incompetent at the time the confession was made and it was, therefore, involuntary.

The trial court held that the confession was voluntary, and it was admitted in evidence.

There was no defense of insanity; no contention that the defendant was not competent to assist in his own defense, or that he was not competent to testify. The defendant was permitted to present all the evidence available, with reference to his mental competency, at the time the confession was made. This included Allen's testimony that he had had himself committed to Eastern State Hospital in 1963 (once in April during the fishing season, and once in November during the hunting season). His testimony was that the doctors at the hospital had told him there was nothing they could do for him.

Allen testified further that when he made the confession he "was all goofed up . . . completely desperate" and wanted somebody to "restrain me, lock me up." The officer to whom he confessed testified that Allen, who was entirely coherent, had told him he had an alcohol problem and "that he figured that if he could get in a hospital or in jail, that he would cure his drinking problem."

After his arrest and while confined in the county jail, his wife and his then attorney signed an application stating that he was mentally ill and should be hospitalized. He was then transferred to the King County Hospital. Two psychiatrists questioned him, and, on the basis of their report (exhibit No. 3), he was, on January 24, 1964, ordered to be "hospitalized at Western State Hospital until released" (exhibit No. 2). May 22, 1964, after some 5 months of treatment, his attending physician at the hospital wrote the Prosecuting Attorney of King County as follows:

> On admission here he expressed remorse over his past history and there was some amount of depressive feeling. During the course of hospitalization he was cooperative for the most part, but continued to manipulate others for his own gain. Upon return from passes with his wife it has been apparent that he has been drinking heavily.
>
> There has been no evidence of psychosis nor have there been any evidence of any abnormal mental content. His symptoms have been of a sociopathic personality disorder and it is unlikely that further treatment here will be of

any benefit to him. He has recovered from the depressive feelings he had at the time of commitment.

He is ready to be discharged any day and we will hold him here until we hear from you further. (Exhibit No. 4)

Despite references to homicidal and suicidal tendencies in the report form signed by the psychiatrists, Allen conceded that he had never hurt himself nor anyone else.

The defense failed to show any adjudication of insanity or incompetency by any court. The only court order in evidence was the commitment to Western State Hospital for hospitalization. We have already quoted from his attending physician's report preceding his being released from the hospital and returned to King County for trial.

There is no testimony, except his own, concerning any time spent at Eastern State Hospital prior to the confession; nor is there any testimony, except his own and that of the officer to whom he confessed, as to his mental condition pinpointed to the day on which the confession was made (November 18, 1963).

We have had occasion to consider the effect of mental illness and even of insanity, so far as witnesses at a trial are concerned. See *State v. Pethoud,* 53 Wn.2d 276, 332 P.2d 1092 (1958); and *State v. Moorison,* 43 Wn.2d 23, 259 P.2d 1105 (1953).

The generally recognized common-law rule now is: That an insane person is competent to testify if at the time of his presentation as a witness he understands the nature of an oath and is capable of giving a correct account of what he has seen and heard; and this is true, even though there has been a formal adjudication of insanity. *State v. Moorison, supra; District of Columbia v. Armes,* 107 U.S. 519, 27 L. Ed. 618, 2 Sup. Ct. 840 (1882).[1]

We have a statute which says that

The following persons shall not be competent to testify:

(1) Those who are of unsound mind, or intoxicated at the time of their production for examination, and . . . . (RCW 5.60.050)

---

[1]An explanation of the rationale of this rule is found in Mr. Justice Field's opinion in the cited case.

For a detailed consideration of cases under that and similar statutes see the *Moorison* case, *supra*. In the *Pethoud* case, *supra*, we said (p. 278):

In interpreting RCW 5.60.050, providing that persons of unsound mind shall not be competent to testify, this court said in *State v. Moorison*, 43 Wn. (2d) 23, 259 P. (2d) 1105:

"The generally recognized common-law rule now is that an insane person is competent to testify if at the time of his presentation as a witness he understands the nature of an oath and is capable of giving a correct account of what he has seen and heard. (Citing cases.)"

This court adopted the rule, as applicable under our statute, and further held that if a person has been adjudicated insane, a presumption arises that he is absolutely incompetent as a witness, which presumption may be rebutted by the party offering him as a witness, but that in the absence of such an adjudication, no such presumption arises. Where there has been no adjudication, the burden of showing incompetency on account of unsoundness of mind is on him who objects on that ground.

■ Turning now from witnesses to the field of confessions, we conclude that the rule should be the same and that, in the absence of an adjudication of insanity or incompetency, and in the absence of any action by the state or its officers which could be said to make a confession involuntary, a confession by a mentally ill defendant should be admissible with the defendant at liberty to introduce evidence of any circumstances that might affect its voluntariness or its probative value.

There is ample support for this position in the cases cited in an A.L.R. annotation on "Mental subnormality of accused as affecting voluntariness or admissibility of confession." 69 A.L.R.2d 348-57.[2]

---

[2]Many of these cases deal with adults with the intelligence quotient of a child of 6 or 7, 8 or 9, 10 or 12. These cases of limited mental capacity we have given no consideration, as the activities and experiences of the defendant in this case indicate no lack of mental capacity but, if anything, a mental illness, and we have limited our citations to cases involving such illness.

In *Redwine v. State*, 258 Ala. 196, 199, 61 So.2d 724 (1952), the defense was insanity. It was contended that the defendant's confession was not voluntary because he was partially insane. The court there noted that

A person may be partially insane and still be competent to testify or make a confession. Insanity is a relative and broad term. A paranoiac is insane, but competent to testify, we doubt not, in many instances.

In *People v. Tipton*, 48 Cal.2d 389, 309 P.2d 813 (1957), the defendant was charged with murder, and confessed prior to the trial. It was held that a defendant's confession is not rendered inadmissible by a low emotional and mental stability on his part, if he is, nevertheless, capable of understanding the meaning and effect of his confession.

While a claim of mental illness will not render a confession inadmissible, it is a factor to be considered in determining the issue of voluntariness and its evidentiary weight. *People v. Boyington*, 3 Cal. App. 2d 655, 658, 39 P.2d 867 (1935).[3]

The defendant requested the following instruction:

You are instructed that if you find that the defendant was of unsound mind or mentally incompetent at the time he made his confession that you are to disregard it completely. (Proposed instruction No. 3)

The proposed instruction was clearly erroneous. The fact that a defendant is of unsound mind or mentally incompetent does not necessarily mean that his confession is to be disregarded completely. The trial court properly refused the requested instruction.

All of the evidence offered by the defendant on the issue of the character and extent of his mental illness was admitted for the consideration of the jury. The jury was instructed, with no exception taken thereto, that if they found any admissions or confessions had been made they were

---

[3]This, too, was a case of a man walking into a police station and making a confession. His conviction was reversed and a new trial granted because the trial court had excluded evidence as to his mental condition at the time of his making the confession.

> [T]o consider all the facts and circumstances connected therewith, together with  .  .  .  all other circumstances which may throw any light upon or aid you in weighing such testimony. (Instruction to the jury No. 8)

While the instruction given might, with propriety, have referred to the claimed mental illness or incompetence of the defendant, it is difficult to see any other "surrounding circumstances" of which the jury could have taken cognizance in considering the weight to be given to the confession.

■ The defendant requested an instruction,

> [T]hat the confession of the defendant may be given as evidence against him but that the confession is not sufficient to warrant a conviction without corroborating testimony. (Proposed instruction No. 2)

The defendant complains of the lack of evidence to corroborate the confession, and then cites cases supporting the proposition that confessions or admissions alone are not sufficient to establish the corpus delicti. The cases have no application. Here, the corpus delicti, the burglary of the Sportland Arcade on December 1, 1961, was established by the testimony of its manager who was called to the premises after the burglary was discovered and who described how entry had been made, the damage done, the amount of the loss, and all the details necessary to establish that a burglary was committed.

In *State v. Marcy*, 189 Wash. 620, 623, 66 P.2d 846 (1937), we approved the R.C.L. statement:

> "Proof of a charge, in criminal causes, involves the proof of two distinct propositions: first, that the act itself was done, and secondly, that it was done by the person charged, and by none other—in other words, proof of the corpus delicti and of the identity of the prisoner. Hence before there can be a lawful conviction of a crime, the corpus delicti—that is, that the crime charged has been committed by some one—must be proved."[4]

The burglary was established by evidence independent of the confession.

---

[4] 7 R.C.L. 774.

What the defendant is really complaining about is that nobody testified to having seen him commit the burglary. Corroborating witnesses of the commission of a burglary are not usually available, nor is such testimony necessary. The defendant's confession of how he gained admission to the Sportland Arcade so closely paralleled the information in the police records and the testimony of the manager, as to the conditions found when he arrived on the premises, that there seems to us to be no lack of corroboration.

■ The defendant cites RCW 10.58.030, which reads:

The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony.

The necessity for corroboration, under this statute, applies to a "confession made under inducement." The jury would first have to find that the confession was made under inducement, and any reference to inducement is omitted from the proposed instruction. The trial court did not err in refusing to give it.

Other assignments of error are, patently, without merit.

The conviction is affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.