320 So.2d 177 (1975)
STATE of Louisiana
v.
Timothy ROSS.
No. 56436.
Supreme Court of Louisiana.
October 1, 1975.
*178 Lawrence J. Genin, Chauppette, Genin, Mendoza & Parent, Marrero, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., James M. Lockhart, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Gretna, Keith S. May, Research Attorney, Research and Appeals Div., for plaintiff-appellee.
SUMMERS, Justice.
On September 23, 1973 Timothy Ross, Clarence Thomas and Irving Joseph Jackson were charged by bill of information with the armed robbery on August 31, 1973 of Robert Richard. La.R.S. 14:64. Ross was separately tried, convicted on December 17, 1973 and sentenced. He urges six bills on this appeal.

Bill 1
A motion to suppress his confession was filed by the defendant on the ground that it was not free and voluntary as he was "unable to comprehend said statement as given to the police" due to his illiteracy. In effect he alleges that because he was unable to read and write, he could not fully understand the contents of the document he signed, and for that reason the police could have inserted matter without his knowledge.
After a hearing out of the presence of the jury, the motion to suppress was denied and this bill was reserved. At the hearing detective Gray testified that the defendant, in the company of his brother and a woman, turned himself in when he walked up to Gray and Patrolman Thomas on the corner of Burmaster and DeGaulle Streets in Algiers on September 28, 1973. Thereafter Ross was taken by the officers to the Gretna City Hall, and at 12:35 that afternoon he was advised of his rights. Ross indicated that he understood, and he signed a rights of arrestee form. At 12:50 Gray began to take the question and answer form statement. After the statement was typed, Ross, who had stated that he had only an eighth grade education and could not read and write well, was given an opportunity to read it. To be certain that he understood what he was signing, Gray also read the statement back to him. Ross stated that he understood. Thereafter, at 1:45, the statement was signed by Ross on each page in the presence of Gray and patrolman Thomas. Gray testified that no coercion, threats or promises were made to induce Ross to sign.
At the hearing, Ross admitted that he turned himself in and that, although he *179 was illiterate, he understood his right to remain silent and to have an attorney present. He claimed, however, that he could not recall whether Gray had read the statement to him before he signed. He also claimed that Gray threatened to whip him if he did not sign. No assertion is made that any particular fact was added to or left out of his statement.
Low mentality and illiteracy in themselves are not grounds for ruling a confession involuntary. They are merely, like other factors, to be considered in the totality of the evidence on the issue. Here it is clear that Ross obeyed the innate compulsion to confess his transgression of the law. He understood he was giving a statement regarding his participation in the crime. He was, moreover, fully advised of his rights and admitted that he understood them. His later change of heart does not render the confession involuntary. The motion to suppress was properly denied. State v. Sears, 298 So.2d 814 (La.1974); State v. Walton, 179 La. 1006, 155 So. 756 (1934).

Bill 2
After the State's witness, Russell Muse, a victim of the robbery, testified, the trial judge said, "You can step down. You are free to leave if you wish. Do you want to hold him for rebuttal?" Whereupon the defense moved for a mistrial, arguing that the judge's statement that the witness could leave indicated to the jury that what the witness said was correct and sufficient, making it unnecessary to recall him. The defense relies on Article 772 of the Code of Criminal Procedure to support his position. That article reads:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
The bill is wholly without merit. We do not read into the judge's statement the meaning or inference the defense argument implies.

Bill 3
Another motion to suppress defendant's confession was filed based upon the contention that defendant could not understand his rights because the officer who advised him of his rights had no legal training and was not a lawyer. According to this argument, only an expert may properly give such advice.
The Miranda decision (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [1966]) does not require that each police station have a "station house layer" present at all times. It is a prerequisite to the free and voluntary character of the confession, however, that the confessor be fully informed of his rights and understands them. These requirements were met in the instant case. The bill has no merit.

Bill 4
During the trial, the following exchange occurred between the prosecutor and detective Gray:
"Q. I see. Would you read the statement to the jury. (Ross's confession).
A. It's a question and answer type statement. The first question: `What is your full name?' Answer: `Timothy Ross, I have no middle name.' `What grade did you go to in school?' `I went to the eighth grade.' `Can you read and write?' `I can't read or write too good.' `Have you ever been told that you have the right to remain silent?' `Yes.' `How many times have you been arrested?'" (parentheses added).
At this point defense counsel objected and moved for a mistrial based upon his *180 contention that the reference to other arrests is a reference to inadmissible evidence of other crimes, which, under Article 770 of the Code of Criminal Procedure,[1] furnishes grounds for a mistrial. Considering the fact that the answer to the question had not been read, the trial judge denied the motion for a mistrial, stating that an admonition, requested by the defense as an alternative, would be sufficient to cure the defense objection.
It is noted, and the State argues, that, inasmuch as the defendant's answer to the question in the statement was never read, there was no reference to other "crimes committed or alleged to have been committed" as prohibited by Article 770. The answer may have disclosed that he had never been previously arrested.
The reading of the defendant's statement by the police is, moreover, not within the prohibition against such comments "by the judge, district attorney, or a court official" as prescribed by Article 770. State v. Lewis, 315 So.2d 626 (La.1975). See also State v. Lepkowski, 316 So.2d 727 (La.1975).
Under these circumstances we agree with the trial judge that these facts did not warrant a new trial, and an admonition to the jury under his discretionary authority was sufficient. See La.Code Crim.Proc. art. 771.

Bill 5
When the trial judge refused to give his requested charges involving reasonable doubt, identification and hung juries, defense counsel reserved this bill.
A review of the requested charges and the general charge given by the trial judge satisfies us that the proposed charges were included in the general charge. In State v. Williams, 310 So.2d 528 (La.1975), this Court upheld the trial court's refusal to give the same three charges, as they were adequately covered by a general charge similar to the one here.
This bill has no merit.

Bill 6
A motion for a new trial and a motion in arrest of judgment were denied.
In the motion for a new trial it is first alleged that the verdict is contrary to the law and the evidence. This allegation presents nothing for review.
Secondly, the motion for a new trial alleges that defendant was prejudiced by the trial judge's comment on the evidence quoted and considered under Bill 2. Having found that Bill 2 had no merit, this allegation of the motion for a new trial is likewise without merit.
The third ground of the motion for a new trial, and the ground asserted in the motion in arrest of judgment, is a claim that Article 782 of the Code of Criminal Procedure (1966) is unconstitutional as it does not require a unanimous jury verdict in a prosecution for armed robbery, nine out of twelve being sufficient.
*181 In this case the jury's verdict was by a vote of eleven to one. In State v. Bradford, 298 So.2d 781 (La.1974) and State v. Blackwell, 298 So.2d 798 (La.1974), we held that less than unanimous verdicts are not constitutionally infirm and do not offend the Equal Protection or Due Process requirements of the State or Federal Constitutions. See also Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).
There is no error in the ruling of the trial judge.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., dissents and assigns reasons.
BARHAM, J., dissents and assigns reasons joining in the reasons assigned by CALOGERO, J.
CALOGERO, Justice (dissenting).
I believe that when the district attorney asked Detective Gray to read "in full" the statement of defendant Ross, having a copy before him which he knew included a question and answer as to the number of defendant's arrests, he triggered the prejudicial indirect reference to prior crimes and should therefore be charged with having made the impermissible reference.
Accordingly, I would find a violation of the Louisiana Code of Criminal Procedure, Article 770 and reverse this conviction.
BARHAM, Justice (dissenting).
When the State introduced a confession by asking a witness to read that confession to the jury, the State became responsible for any surplusage which is violative of La.C.Cr.P. art. 770. The motion for mistrial which was raised because the State had made reference to other arrests through the witness' reading of a confession had merit. Denial of that motion is reversible error.
I respectfully dissent.
NOTES
[1] La.Code Crim.Proc. art. 770:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * *
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."