LEMMON, Judge.
Ernest Brown, a 14-year old juvenile, has appealed from an adjudication of delinquency under R.S. 13:1570, based on violation of criminal law, after being found guilty of simple burglary. The issues on appeal center around the admissibility of Brown’s confession, the contentions being that (1) he was not informed of his constitutional rights, (2) the pre-interrogation warnings, if given, were not adequate, and (3) he did not understand the waiver of his rights.
I
In the early morning hours of July 30, 1976, Mrs. Maria DiGiovanni was raped and murdered, and her apartment was robbed. Two suspects were apprehended, and in their confessions they stated that certain items taken in the burglary were located at 1674V2 North Claiborne Avenue (which is Brown’s address). After obtaining a search warrant, a police officer searched the apartment at 11:15 p. m. on July 30, recovered several items (including an accordian identified as belonging to the victim), and asked Brown’s mother to accompany him to police headquarters, where he interviewed her. Brown was not at home at the time.
Between 12:30 and 1:00 a. m. on July 31, 1976 Brown was taken by his aunt to headquarters, where Detective Joseph Miceli met with the juvenile and his mother. Miceli testified that he verbally advised the juvenile, in the presence of his mother, of the investigation and of his constitutional rights substantially in accordance with the *1075 form prepared by the police department.[1] Miceli further testified that he asked Brown and his mother if they understood; that they stated that they did; that he did not question the juvenile further, nor did he threaten or intimidate him; and that the mother simply told the juvenile to tell the truth.
Miceli then took them to the juvenile bureau, where Detective John Meyer typed a statement, which informed Brown of the investigation and of his constitutional rights, and read the statement to the juvenile in the presence of his mother as follows:
Ernest before I ask you any questions I must inform you of your rights. You are being investigated for being an Accessory in the Murder and Rape of Mrs. Maria DiGiovanni. You have the right to remain silent, that is you do not have to answer any questions that I may ask you. You have the right to have an Attorney. You also have the right to have an attorney present while you are making this statement. However, if you wish to waive your rights you may do so and make the statement of your own free will.
Q. I ask you in the presence of your mother, do you wish to make this statement?
A. Yes.
/s/ Ernest Brown
/s/ Mary Brown
/s/ Pet. John C. Mever
After Brown indicated he wished to make a statement, Meyer typed signature lines for the juvenile, for the mother, and for himself, and then proceeded to ask questions and receive answers, typing each question and answer before proceeding to the next question. When the first typed page was completed, Miceli handed the page to the juvenile and his mother, who signed the waiver portion. Brown also initialed the bottom of that page and of the second page, after it was typed, and both signed again at the end of the three-page statement. In the statement Brown admitted that he watched for police while the other two persons broke into the house to commit a burglary.
II
At the hearing on the motion to suppress the statement Brown and his mother denied that any warnings were given, and they renew that argument on appeal. The mother, whose work at a day care center includes reading stories to children, stated at the hearing that she didn’t read the statement because she didn’t think she was allowed to do so and that also she thought she could not refuse to sign it.
Factual findings relating to the admissibility of a confession should not be disturbed if supported by credible evidence. State v. Cobbs, 350 So.2d 168 (La.1977).
The trial judge held that Brown was informed of his rights, and the record supports that conclusion. Two police officers, found to be credible, testified that the warnings were given, and both the juvenile and his mother signed the waiver indicating willingness to make the statement. The minor inconsistency in testimony (Miceli testifying that he left the room after Brown signed the waiver, but before the *1076 questioning was begun, and Meyer testifying that Brown did not sign until several questions and answers had been completed) and the fact that Miceli did not sign as a witness to the waiver are not so significant as to compel a contrary conclusion.
Ill
Brown further contends that if the warnings were given as the officers testified, Miceli’s warnings failed to inform him that he could stop answering questions at any time and Meyer’s warnings, in addition to this deficiency, failed to inform him that any statement could be used against him and that a lawyer would be appointed if he could not afford one. Brown argues that each and every one of these warnings is an absolute prerequisite to interrogation and that omission of one renders the statement inadmissible.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the court summarized the warnings prerequisite to interrogation as follows:
“To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.”
The court went on to observe that “(o)nce warnings have been given” and “the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.” The court did not state that the individual must be warned prior to interrogation of the right to stop answering questions, but merely emphasized that the privilege may be exercised at any time.
Accordingly, we hold that the warnings by Miceli and Meyer fully advised Brown of his constitutional rights.
IV
Brown finally contends that the statement was not voluntarily given.
The privilege against self-incrimination may be claimed in any proceedings, including juvenile proceedings to determine delinquency, which may be the basis for confinement in a state institution. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
Under the totality of circumstances in this case we find that the privilege was knowingly and voluntarily waived.
Although Brown was classified in psychological testing as a functional illiterate, low mentality and illiteracy are not in themselves grounds for ruling a confession involuntary, but are merely factors to be considered in determining the issue. State v. Ross, 320 So.2d 177 (La.1975). Significantly, this juvenile agreed to give a statement while in the presence of his mother. There was no indication that he was not allowed to consult with her before signing the waiver.[2] He was questioned without *1077 threat or coercion, for a reasonable length of time, in the presence of his parent. He did not refuse to answer any questions, nor did he attempt at any time to repudiate any answers. The overall evidence supports the conclusion that the statement was voluntarily given.
The judgment is affirmed.

AFFIRMED.

.The form, introduced into evidence, reads as follows:
“I am investigating_
% :}! í|í Sf! Sfc
“The possibility of your participation in other crimes is also under investigation. According to provisions in the Constitution of the United States and of the State of Louisiana it is my duty to inform you that:
“I. You need not make any statements; that is, you have a right to remain silent;
II.Anything you say may be used against you in trial;
III. You have a right to consult with and obtain the advice of an attorney, before answering any questions;
IV. If you cannot afford an attorney, the court will obtain an attorney to represent you and advise you;
V. You have a right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statement.”

. After the waiver was signed and during the questioning the mother attempted to interject something into the statement, but Meyer instructed her that the statement was her son’s and that she was not to add anything.