■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD K.

BYRNE, Appellant.—Appeal from a judgment of the County Court of Rensselaer County, rendered March 31, 1977, upon a verdict convicting defendant of the crimes of kidnapping in the second degree and criminal possession of a weapon in the second degree. On May 11, 1976, defendant appeared at the Poughkeepsie, New York, home of his girlfriend, Irene Racz, and, while awaiting Miss Racz' return from work, he and her mother, Marie Toth, drank some gin and some wine which defendant had brought with him. By the time Miss Racz arrived home, at about 5:20 P.M., defendant and Mrs. Toth were intoxicated. Apparently Mrs. Toth had been pressuring her daughter, who was 20 years old, to date other men because of the large age difference between her and defendant, whom she had been dating for three months. Miss Racz had informed defendant that she was going to date other men and, finally, a day or two before the incident in question, she told defendant that she did not want to see him for a few weeks until things settled down at home. Following Miss Racz' return home on May 11, 1976 the conversation developed into a discussion of her seeing men other than defendant, during which defendant appeared confused and bewildered. Shortly, after Mrs. Toth indicated that she would encourage her daughter to see other men, defendant produced a handgun and ordered Mrs. Toth to lie on the floor and keep quiet. Miss Racz tried to take the gun from defendant and he struck her on the head with it, inflicting a small cut to her forehead. Mrs. Toth was bound with tape and a lampcord, and a gag was placed in her mouth. Miss Racz initiated a brief search for her birth certificate because defendant told her he knew a priest who would marry them that night. Defendant placed Mrs. Toth in a closet and, apparently, with Miss Racz' consent, they left. For several hours the couple drove aimlessly through the countryside, during which time defendant apparently remained in a confused and bewildered state. At some point during the early morning hours, they stopped and Miss Racz admitted that she kissed defendant and that he fell asleep for a while with his head in her lap. She made no attempt to escape. Thereafter, they begun to drive north and stopped at a roadside diner where Miss Racz left a note stating that she had been abducted and asking that the police be notified. Later, they stopped at a small store where Miss Racz informed the clerk that she had been kidnapped by an armed man in a car parked outside. Defendant's vehicle was spotted by State Police in the Town of Nassau and a high speed chase ensued. At the intersection of Routes 9 and 20 in the Town of Schodack, defendant's car was stopped at a roadblock. Defendant left the vehicle, taking Miss Racz with him at gunpoint. For the next five hours, defendant held the police at bay by holding the gun at Miss Racz' head and threatening to harm her. During this period, the police attempted to negotiate with defendant and ultimately he surrendered. Defendant was taken into custody and advised of his rights. Subsequently, he signed a written account of his involvement in the matter. Following a jury trial, defendant was convicted of kidnapping in the second degree and criminal possession of a weapon in the second degree. This appeal ensued. Initially, defendant contends that the evidence adduced at trial was legally insufficient to establish his guilt of kidnapping in the second degree. We disagree. While the facts underlying this bizarre series of events suggest that Miss Racz may have left her mother's apartment with defendant voluntarily, there is sufficient evidence from which the jury could conclude that during the five-hour period when surrounded by the State Police, defendant restrained Miss Racz within the meaning of subdivision 1 of section 135.00 of the Penal Law by threatening to use deadly physical force. Accordingly, there was sufficient evidence for the jury to find that

defendant abducted Miss Racz (Penal law, § 135.00, subd 2) and that defendant committed kidnapping in the second degree (Penal Law, § 135.20). Any contention by defendant that his conduct did not restrict Miss Racz' movements in such a manner as to interfere substantially with her liberty must fail in light of the undisputed evidence that for a five-hour period he aimed a loaded gun at her head and threatened to kill her if the police did not stay back. Similarly, defendant's argument that Miss Racz consented to defendant's actions is not supported by the record. Significantly, the fact that Miss Racz left written and oral messages indicating that she had been abducted and requesting that the police be called is strong evidence that her voluntary participation in defendant's odyssey had ended. Moreover, there was testimony that when stopped by the police, defendant dragged Miss Racz from his car at gunpoint and that during the standoff period she was crying, trembling and asking defendant to release her. With regard to the issue of intent, we conclude that the evidence in the record, including conflicting expert testimony as to diminished capacity, created a question of fact for the jury. Next, defendant contends that his confession was not voluntary and, therefore, should not have been admitted into evidence. He bases this contention upon the theories that he was mentally ill at the time he made the confession and that the confession was the result of psychological pressure. Neither theory, however, is supported by the evidence. To be voluntary, a confession must be the product of a rational and meaningful act of volition (*Blackburn v Alabama,* 361 US 199, 211; *People v Howard,* 27 AD2d 796), but the mere existence of mental instability in a defendant does not require suppression of his confession where that defendant was not mentally ill during the making of his statement (*People v Adams,* 26 NY2d 129, cert den 399 US 931). While the record contains evidence that defendant may have been very agitated during the initial few minutes of his confrontation with the State Police, the evidence further establishes that he thereafter calmed down considerably and was quite rational under the circumstances. More importantly, the evidence shows that defendant was calm, rational and emotionally stable when he made his confession. "Psychological coercion may be any method or technique which is intended to, or may, play directly or indirectly upon the defendant, so as to instill in him a sense of fear, foreboding, insecurity, or other feeling which will induce, motivate or compel him to waive his rights and respond to questions posed by law enforcement officers. Psychological coercion, while difficult to assess, is a direct threat brought to bear by a sophisticated type of pressure." (*People v Zimmer,* 68 Misc 2d 1067, 1074, affd 40 AD2d 955). Here, immediately after his arrest defendant was given his *Miranda* warnings and they were again given just prior to the questioning which resulted in his written confession. He was offered cigarettes and coffee and he admits that he was in no way threatened by the police. Moreover, defendant began to make his statement within one-half hour of his arrival at the station and the interrogation lasted two hours. Accordingly, we find no direct threat brought to bear by sophisticated pressure despite defendant's claim that he had had little sleep in the preceding 36 hours and that the police had promised to allow him one-half hour to speak with Miss Racz, a promise the police say was conditional upon Miss Racz' consent (see *People v Wormuth,* 35 AD2d 609; *People v Robinson,* 31 AD2d 724). Finally, we reject, as wholly lacking in merit, defendant's contentions, raised in his supplemental brief, that trial counsel was inadequate, that the jury charge was erroneous and that it was error to allow certain expert testimony. We perceive no prejudice inherent in the presentation of evidence as to defendant's mental condition on the

issue of his capacity to form the intent to commit the crimes charged rather than as a defense under section 30.05 of the Penal Law, particularly since the jury obviously rejected such evidence. Judgment affirmed. Mahoney, P. J., Kane, Staley, Jr., Main and Herlihy, JJ., concur.