[No. 11212-1-I.   Division One.   May 2, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. MARSHALL DAVIS III, *Appellant.*

*Raymond H. Thoenig* and *David R. Wohl* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg Hubbard, Deputy,* for respondent.

RINGOLD, J.—The defendant, Marshall Davis III, appeals his judgment and sentence imposed upon conviction for first degree reckless burning. Davis assigns error to the introduction into evidence of his confession, claiming that it was not the result of a knowing and intelligent waiver of his privilege against self–incrimination. We find no error and affirm.

On March 28, 1979 a King County jail guard discovered a burning coat tied to the bars of Davis' cell, located in the psychiatric section of the jail. After extinguishing the blaze

the guard summoned fire investigators. Upon their arrival Davis signed a written waiver of *Miranda*[1] rights and a statement that he set his coat afire "to get the attention of the people with authority to get us out of the situation we are in."

Davis was charged by information with first degree arson, RCW 9A.48.020. Upon defense counsel's request the trial court ordered Davis committed to Western State Hospital for observation to determine his competency to stand trial. The report submitted to the court following psychiatric testing concluded that Davis was competent to stand trial, but had mental disabilities preventing him from forming the specific intent required for first degree arson: knowingly and maliciously causing a fire. The report provided in part:

> Upon admission, he was found to be alert, cooperative and oriented. He had poor insight and judgement, although he appeared of average intelligence. He was quite friendly and affable and his mood and affect were appropriate. He was rather tangential in his speech and had a tendency to be very vague about details of his past life. . . . [H]e did admit to being familiar with quite a few mental hospitals across the country when directly questioned. . . .
>
> Our diagnostic impression of the defendant is: schizophrenia, chronic paranoid type. In our opinion, the defendant was unable to form the specific intent to maliciously and knowingly set a fire at the time of the alleged offense. It is further our opinion that he was not able to tell right from wrong nor able to appreciate the nature and quality of his conduct at that time. At this time, we consider the defendant competent to stand trial and able to assist his attorney in his defense on this matter . . .

Upon submission of the psychiatric report the State moved that the trial court enter a plea of not guilty by reason of insanity. Defense counsel objected, and the court reserved ruling on the motion.

Both parties agreed that the CrR 3.5 hearing inquiring

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

into the voluntariness of Davis' confession would be held at trial, and proceedings commenced. The fire investigators who questioned Davis testified that they thoroughly explained his constitutional rights, that he appeared to understand them, and that he made his statement willingly and not under threat. Davis testified to the effect that he did not understand the consequences of his waiver and was pressured into signing it. He stated at trial:

A. . . . I mean, I signed it just at a rate of speed, say, for example, like if I'm talking to you and you hand me a piece of paper from the people here, you say, "Sign this, because this is one of the procedures," I really didn't— didn't see this real clearly until I was—I was detained this time and this was brought before me.

Questioned about Davis' ability to make a voluntary waiver, Dr. Proctor, one of the authors of the psychiatric report, testified:

Q. Is there anything about those circumstances that struck you as being incompatible with your diagnosis of his mental state at the time that this offense took place? A. No.

THE COURT: You found no intellectual impairment?

THE WITNESS: No, your Honor. I think he's of average or above average intellectual ability.

As to Davis' mental condition, Dr. Proctor reaffirmed his diagnosis in the psychiatric report that Davis was a paranoid schizophrenic and was unable to form the specific intent required for first degree arson.

The trial court entered no written findings but ruled that Davis' statements were made voluntarily. As to Davis' ability to commit first degree arson, the trial court in its oral opinion stated:

He had substantially diminished capacity in terms of his ability, I suppose, to form malice or intentionally commit acts endangering the life or safety of others.

He's capable of reckless activity, however, and he's guilty of reckless burning in the first degree.

Davis was convicted of first degree reckless burning and given a suspended sentence and 5 years' probation, condi-

tioned on his participation in a mental health program. He appeals, contending that the mental disability which rendered him unable to knowingly and maliciously set a fire necessarily prevented him from making a knowing and intelligent waiver of *Miranda* rights.

██ The trial court failed to follow the mandate of CrR 3.5(c), requiring entry of written findings and conclusions regarding the voluntariness of a confession. When CrR 3.5 has not been observed the appellate court must examine the record and make an independent determination of voluntariness. *State v. Hoyt,* 29 Wn. App. 372, 628 P.2d 515 (1981); *State v. Vickers,* 24 Wn. App. 843, 604 P.2d 997 (1979). *See also State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981); *State v. Coles,* 28 Wn. App. 563, 625 P.2d 713 (1981). In determining voluntariness the crucial inquiry is "'whether the confession was "free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Vickers,* at 846 (quoting from *Malloy v. Hogan,* 378 U.S. 1, 7, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1946)).

Davis argues that the State has not met its heavy burden of proof in demonstrating the voluntariness of his waiver and statement to the fire investigators, citing *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968). *Davis* held that the State must prove voluntary waiver of *Miranda* rights beyond a reasonable doubt. This standard was later disavowed, however, in *State v. Braun,* 82 Wn.2d 157, 509 P.2d 742 (1973), where the Supreme Court established the preponderance of the evidence as the proper standard of proof. *Accord, Coles; State v. Gross,* 23 Wn. App. 319, 597 P.2d 894 (1979).

Davis also argues that *State v. Allen,* 67 Wn.2d 238, 406 P.2d 950 (1965), which addressed the issue of the voluntariness of a confession by a mentally ill defendant, creates an impermissible presumption of waiver and therefore must not be followed. *Allen* held that:

[I]n the absence of an adjudication of insanity or incompetency, . . . a confession by a mentally ill defendant should be admissible with the defendant at liberty to introduce evidence of any circumstances that might affect its voluntariness or its probative value.

*Allen,* at 242.

The crucial question for this court is whether Davis' waiver of rights and confession were made voluntarily. If his mental condition precluded him from making a knowing and intelligent waiver because of his susceptibility to suggestion or to real or perceived intimidation, his confession was not voluntary, and must be excluded. To the extent that *Allen* would admit a confession before its voluntariness is established, it is incorrect.

■ *Allen* is correct, however, in holding that a claim of mental illness does not necessarily render a confession inadmissible, but rather is one factor for the court to consider in determining whether a confession was voluntary. *Allen,* at 243; *Hoyt,* at 380. This statement of the law is supported by the overwhelming weight of authority. An annotation on the subject in 69 A.L.R.2d 348, 350 (1960) states:

[M]ental subnormality on the part of one confessing to a crime does not of itself deprive the confession of voluntariness or bar its admission in evidence, so long as the subnormality has not deprived the person in question of the capacity to understand the meaning and effect of the confession.

(Footnote omitted.)

Other jurisdictions uniformly hold that mental deficiency does not automatically render a confession inadmissible but is one factor to be considered in determining voluntariness. *E.g., People v. Watson,* 75 Cal. App. 3d 384, 142 Cal. Rptr. 134 (1977); *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978); *People v. Byrne,* 66 A.D.2d 963, 412 N.Y.S.2d 39 (1978); *State ex rel. Brown,* 355 So. 2d 1073 (La. Ct. App. 1978).

■ The State met its burden of proving by a preponderance of the evidence that Davis' waiver was voluntary,

*i.e.,* made freely without threats or promises. *Malloy.* In his psychiatric report and trial testimony Dr. Proctor referred to Davis' orientation and above average intelligence. This psychological assessment corroborates the fire investigators' testimony and supports the court's ruling that Davis understood his rights and made his statement willingly and without coercion. Davis' testimony at trial to the contrary is insufficient to mandate reversal. Even where fundamental constitutional rights are implicated requiring a more independent appellate review, factual findings of the trial court arising out of contradictory testimony are entitled to great weight. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965).

Davis' mental impairment resulting in his inability to act knowingly and maliciously was but one factor in the court's consideration whether his waiver of rights and confession were voluntary. *Hoyt.* We have reviewed the record and find no constitutional error.

The judgment is affirmed.

DURHAM, A.C.J., and CALLOW, J., concur.

Reconsideration denied June 8, 1983.

Review denied by Supreme Court August 12, 1983.