IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| KRISTEY L. RICKEY and KELLEY R. CAVAR, individually, and as Co-Executrixes of the Estate of Gerald Lee Munce, Deceased,<br><br>      Respondents,<br><br>v.<br><br>MICHAEL B. SMITH as Litigation Guardian Ad Litem for CLARENCE G. MUNCE,<br><br>      Appellant. | No. 45255-3-II<br><br><br>UNPUBLISHED OPINION |

GORDON MCCLOUD, J.P.T. — Clarence Munce (Munce) appeals a trial court judgment awarding damages, including reasonable costs and attorney fees, to Kristy L. Rickey and Kelly R. Cavar, co-executrixes of their father Gerald Munce's estate (Gerald's estate).

This is a lawsuit by a son's estate against his father arising out of a particularly tragic incident. Munce shot his son Gerald Munce in the back and killed him. Gerald's estate sued Munce for personal injuries, wrongful death, survival, and outrage. Following a series of proceedings that ultimately resulted in the trial court striking Munce's answer and affirmative defenses as sanctions for discovery

violations, that court granted summary judgment on liability against Munce. Without any further discovery violations, the trial court entered an order of default against Munce. The trial court then held a reasonableness hearing on the amount of damages, in which it prohibited Munce from cross-examining witnesses or presenting evidence and limited his arguments to legal matters only. The trial court ultimately awarded $2,048,975.94 to Gerald's estate for loss of parental consortium, attorney fees, and costs.

Although the trial court properly granted summary judgment to Gerald's estate on its tort claims, it improperly entered the order of default, improperly denied Munce the right to a jury trial on damages, and improperly limited his right to participate in the damages hearing. We therefore affirm in part, reverse in part, and remand.

FACTS

In June 2008, Clarence Munce shot his son Gerald in the back and killed him. Munce told police that he intended only to scare Gerald. No one else witnessed the incident. The State charged Munce with first degree murder. During the course of the criminal proceedings, Gerald's daughters, Kristy L. Rickey and Kelley R. Cavar, both individually and as co-executrixes of Gerald's estate, filed claims against Munce in superior court under Washington's wrongful death and survival statutes. In his answer to Gerald's estate's wrongful death complaint, Munce asserted several

affirmative defenses—including self-defense, assumption of risk, apportionment, and comparative fault. He also asserted counterclaims for assault and battery.

I.      The Original Trial Court Judge Struck Munce's Answer as a Discovery Sanction

Pending a competency determination for Munce in the criminal case, the superior court in the civil case entered an order staying discovery from Munce for 120 days. Munce was then found incompetent to stand trial in the criminal case. The trial court in the civil case then lifted its discovery stay[1] and appointed Michael Smith to act as Munce's guardian ad litem.

Munce did not move to further stay discovery in the civil case pending the outcome of the criminal proceedings. Instead, he timely responded to Gerald's estate's pending discovery requests, but he provided little or no substantive information. Instead, he objected to most of the requests for admission and provided equivocal admissions and denials to the interrogatories based on his assertion of the Fifth Amendment[2] privilege against self-incrimination and his alleged mental incompetency. On July 2, 2009, the original trial court ordered Munce to present himself for deposition; it also allowed Munce's criminal defense attorney, Erik

---

[1] Munce did not challenge the order lifting the discovery stay that order is not at issue in this appeal.

[2] U.S. CONST. amend. V.

3

Bauer, to attend the deposition with Munce to "instruct and assert privileges." Clerk's Papers (CP) at 464.[3] During that deposition, Bauer instructed Munce to refuse to take the oath and to refuse to answer all but one question—his name—based on the Fifth Amendment privilege against self-incrimination. U.S. CONST. amend. V. Gerald's estate moved for sanctions against Munce based on his inadequate responses to discovery requests and his abuse of the Fifth Amendment privilege during his deposition: it moved to strike Munce's affirmative defenses and answer, to dismiss his counterclaims, and to deem him in default based on his failure to provide any meaningful substantive answer or response to discovery requests.

The original trial court ruled that Munce's blanket assertion of the Fifth Amendment privilege during his deposition was improper. The court imposed severe sanctions: "I am going to impose some sanctions. I am going to strike the counterclaims and the affirmative defenses. [But] I'm not going to grant your request for some kind of a directed verdict in the case." CP at 2219. The original trial court's written findings, entered January 22, 2010, stated, "[T]he Court will impose sanctions as follows: (1) Defendant's Affirmative Defenses and Answers shall be stricken; (2) Defendant's Counter-claim[s] shall be stricken and shall forthwith be dismissed." And it reiterated, "[T]he Court shall not enter an Order of

---

[3] This court's commissioner denied discretionary review of this order. Resp'ts' Opening Br. at App'x 6.

4

Default, which would be tantamount to a directed verdict on the issue of liability in this matter."[4]  CP at 1386.

Munce moved for reconsideration of the sanction order, arguing, "While this Court stated in its oral ruling that it was not imposing the most severe sanction of a directed verdict, the court has for all practical purposes, granted a directed verdict for the plaintiffs by dismissing the defendant's affirmative defenses and counterclaims."  CP at 1132.  The original trial court acknowledged Munce's argument but nonetheless issued an order striking Munce's answer, including his affirmative defenses and counterclaims.

II.     The Second Trial Court Judge Reinstated Munce's Previously Stricken Answer and Affirmative Defenses

The wrongful death case against Munce was then transferred to a different superior court judge.  Gerald's estate moved for (1) summary judgment "regarding the issues of negligence and proximate cause," and (2) an order of default.  CP at 1443-58.  On the negligence issue, the motion for summary judgment stated, "Clarence Munce procured an M1 carbine rifle from behind his front door, thereafter exited his home onto his front porch where he pointed the rifle in the general direction of his son Gerry, pulled the trigger, firing a shot which struck Gerry causing

---

[4] The trial court entered an amended order on February 12, 2010, but these portions remained the same.  CP at 1427-28.  This court's commissioner denied discretionary review of this order.  Resp'ts' Opening Br. at App'x 7.

5

fatal injuries." CP at 1456. Gerald's estate argued, "As all affirmative defenses have been stricken in this case, thus any justification or excuse for such behavior is now irrelevant." *Id.* On the proximate cause issue, Gerald's estate claimed that "there is simply no question that based on all available medical evidence, the sole proximate cause of Gerald's death was the bullet fired from Clarence's M1 carbine rifle." CP at 1458. Further, Gerald's estate asserted in the motion for partial summary judgment, "As is self-evident and should have always been the case, this case should simply proceed on issues relating to damages." *Id.*

On June 10, 2011, this second trial court judge granted summary judgment in part. This judge ruled that Munce was negligent but reserved the question of contributory negligence for trial:

> The Court GRANTS Plaintiffs' motion on liability only. The percentage of fault attributable to Clarence Munce is a question of fact for the jury to determine at trial as Defendant will be allowed to argue contributory negligence at trial and it will be for a jury to determine the relative percentage of fault between Clarence Munce and Gerald Munce.
>
> Plaintiff's motion on proximate cause is DENIED.

CP at 2451. The court denied Gerald's estate's motion for reconsideration. CP at 2363-64. That second trial court also reinstated Munce's answer and contributory negligence affirmative defense. CP at 2459.

III. This Court Granted Discretionary Review and Reversed

Gerald's estate moved for discretionary review of the trial court's order granting in part and denying in part Gerald's estate's motion for partial summary judgment and reinstating the answer and affirmative defense, as well as the denial of his motion for reconsideration. Verbatim Report of Proceedings (VRP) (June 14, 2013) at 4; CP at 2363-65; *Rickey v. Munce*, noted at 174 Wn. App. 1019, 2013 WL 1164068, at \*1 (Wash. Ct. App. Mar. 19, 2013).

We granted discretionary review. On March 19, 2013, we reversed the second trial court's amendment of the original trial court's discovery sanction order and remanded for trial. *Rickey*, 2013 WL 1164068, at \*1. We ordered the trial court on remand to preclude Munce from presenting his previously stricken answer and contributory negligence affirmative defense. *Id.* This ruling on discretionary review addressed the second court's denial of summary judgment on what it termed the "proximate cause component" of Gerald's estate's claim.[5] That ruling did not explicitly address the second trial court's denial of summary judgment on negligence. We stated, though, that we anticipated a trial on damages:

---

[5] We stated, "Denying summary judgment on the proximate cause component of Gerald's estate's claims, the second court instead (1) concluded that the original court's written findings of fact and conclusions of law were internally inconsistent and conflicted with its oral ruling; and (2) based on these perceived inconsistencies, the second court sua sponte reinstated Munce's answer and contributory negligence affirmative defense." CP at 2462-63 (internal footnote omitted).

Even though the [first trial court's] ruling deprived Munce of his affirmative defenses, there remained for trial at that point the issue of liability and damages. And even if entry of a default judgment might arguably have been an option when the second judge later granted Gerald's estate's motion for summary judgment on the issue of Munce's liability, the issue of damages, at least, still remained for trial.

CP at 2465.

### IV. On Remand, the Trial Court Entered a Default Judgment Against Munce

On remand, Gerald's estate moved again for an order of default against Munce, arguing that "the Defendant ha[s] failed to plead, or otherwise defend, after due and proper service of process on Defendant." CP at 2491. Gerald's estate further asserted, "As touched on by the appellate court, once the issue of negligence was resolved adversely against the Defendant as a matter of law, the effect of the affirmed striking of the answer is that the Defendant is in default. . . . Therefore, Defendant has otherwise failed to provide an Answer or any affirmative defenses, and an Order of Default should he entered against the Defendant." CP at 2493. In response, Munce contended, "The Answer of 2009 has never been struck in its entirety by any order of this Court. . . . [I]t is in full force and effect with the exception of the affirmative defenses and counterclaim which was ordered stricken."

CP at 2531.[6] Munce asserted, "As such, . . . [w]e proceed to trial as this court has scheduled and the issue before the court will be plaintiff's injuries which are denied as well as plaintiff's claimed damages." CP at 2531.

On June 14, 2013, the trial court held a hearing on the motion for default. The partial summary judgment ruling from June 10, 2011 still controlled on the issue of liability. VRP (June 14, 2013) at 14 ("Well I don't think you have to prove negligence based on what's happened and the decisions that I've made. I'm just saying the case needs to go back for damages and that's the only issue."). The parties filed no additional motions for summary judgment. During this hearing, the trial court referenced a subsequent "trial" on damages, but provided no guidance about conducting a Civil Rule (CR) 55(b)(2) hearing on damages.

The trial court then entered an order of default on July 2, 2013. CP at 3512-13. It entered the order under CR 55, not as a discovery sanction. CP at 2018, 2493, 2597; *see* CP 3513 ("It Is Hereby, ORDERED, ADJUDGED AND DECREED that Defendant Clarence G. Munce, having his Answer stricken as a discovery sanction, is in default, and an Order of Default shall be and is hereby GRANTED in the above-entitled action") (boldface omitted).

---

[6] This is not accurate. As discussed above, the trial court in 2010 ordered, "Defendant's Affirmative Defenses *and Answers* shall be stricken." CP at 2189 (emphasis added).

9

V.     The Remand Court Then Held a CR 55(b)(2) Hearing

On August 1, 2013, following the default order, the trial court ordered the parties to submit additional briefing on Munce's right to participate in a damages hearing on Gerald's estate's damages.  CP at 3299-3304, 3332-41.  On August 5, 2013, the court held a hearing on Gerald's estate's damages under CR 55(b)(2).

A. The Trial Court Denied Munce a Jury Trial

Munce claimed that he had a right to a jury trial on damages.  He cited article I, section 21 of the Washington State Constitution, *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 638, 771 P.2d 711, 780 P.2d 260 (1989), and  *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 333, 54 P.3d 665 (2002), all of which are discussed below. CP at 3299-3303; VRP (Aug. 5, 2013) at 21.  He also argued,

> Mr. Lindenmuth indicated, originally as it, for example, relates to the toxicologist Nelson, originally thought I hadn't presented that evidence. I clearly had.
>
> There is nothing -- my client has not been available to me, Your Honor, any more than if he was dead.  This case was really segregated into liability and damages, and the damages aspect of it has not been prejudiced.  And we should be able to participate, or you know, clearly, we are going to be headed back up to the Court of Appeals.
>
> We just want a fair hearing, if that's the route the court is going to take.  Obviously, we wanted our jury trial.  We read the Court of Appeals decision to so indicate that.

VRP (Aug. 5, 2013) at 34.

The trial court denied Munce's motion for a jury trial. VRP (Aug. 5, 2013) at 40-42. It reasoned that *Smith* and CR 55(b)(2) provide the court discretion to decide how to conduct the hearing, including whether to hold a jury trial. *Id.* at 11-12. The court stated, "In this case, what I have is a trial court judge deciding default. Without any further guidance, just a simple direct order saying default." *Id.* at 39.[7] Noting that Munce's refusal to answer discovery "seriously impede[d] the plaintiffs' ability to present their case," the court ruled, "I am not going to do a trial. I think the default eliminated that as a requirement . . . ." *Id.* at 40.

Applying similar reasoning, the court precluded Munce from arguing factual issues, permitting him to argue only legal matters:

> I think that we're in a default situation now. There is no answer. There is no counterclaims. There is really nothing before the court that's in controversy.
>
> . . . .
>
> It seems to me that always on that issue, always the law in this, irrespective, the decision of the court has to be based upon the law. The question really has to do with the facts.
>
> I'm going to listen to the defendant on issues of law. . . . Issues of fact, however, will be presented by the plaintiffs only, without cross-examination.

---

[7] The court did not address Munce's arguments based on the state constitutional right to a jury trial.

*Id.* at 41-42.[8]

B. The Trial Court Rejected Munce's Proffered Expert Witness Declarations

At the hearing, Munce offered a declaration from Dr. Clifford Nelson. CP at 3296-98. Nelson's declaration purported to address Gerald's "minimal to no conscious pain or suffering." CP at 3297. Munce argued that "as it relates to discovery, whether it was depositions, interrogatories or other depositions, that that discovery was all conducted in this case." VRP (Aug. 5, 2013) at 44.

Gerald's estate filed a motion asking the court to disregard this declaration. CP at 3337-39. The trial court granted the motion and stated,

> [I]t's based a great deal upon speculation, because we don't know the timeframes. And the only way would have known the timeframes . . . is if Mr. Munce had been forthcoming in answering those questions, how long did this go on. And to say now you can't prove it when the very reason you can't present the evidence is because of Mr. Munce's refusal to answer.
>
> It seems to me the sanction that was entered, that seems to be consistent with that.

VRP (Aug. 5, 2013) at 53. The trial court concluded that Nelson "can't give us with any sort of degree of medical certainty the degree of injury that [Gerald] sustained.

---

[8] At the hearing, Gerald's estate called seven witnesses and presented a video montage of photographs. In accordance with the trial court's ruling Munce did not cross-examine any of the witnesses and he presented no witnesses or evidence. CP at 3347-48; VRP (Aug. 5, 2013). Gerald's estate also submitted a number of documents in support of its alleged damages.

But we would know if Mr. Munce had been forthcoming, at least we'd have a better idea if Mr. Munce was forthcoming and not nonresponsive to his depositions." *Id.* at 45.

Munce also sought to introduce a declaration from William Partin about loss of net earnings that the estate would have accumulated. CP at 3276, 3288, 3291-94; VRP (Aug. 5, 2013) at 43-44. Munce argued, "Mr. Partin's opinions as it relates to the damage component or that damage component was fully discovered. It was -- reports were exchanged. That information was available for deposition. There's nothing as it relates to Mr. Partin's testimony or opinions that has anything to do with the discovery sanction aspect." *Id.* at 44. The trial court reserved ruling on the admissibility of Partin's declaration during the hearing on damages, stating, "I want to take a look at the evidence that comes from the other side first before I rule on that." *Id.* at 53. Although the trial court did not rule on the issue during the hearing, the court in its written order favored the economic loss calculation that Gerald's estate offered from Dr. Richard Parks, rather than Partin's calculation. CP at 3517, 3520.

Munce offered no additional evidence.

C. The Closing Argument Was Limited

In her closing argument, Munce's attorney noted that she remained "mindful of the instructions that you've given me as far as any comments what they're limited

13

to" and therefore discussed "the record and the law." VRP (Aug. 5, 2013) at 153-54.[9] She mainly addressed the admissibility of Gerald's estate's exhibits. *Id.* at 154. She also presented legal arguments about what the court should and should not consider in calculating damages. *Id.* at 156-67. She further argued that, in calculating damages, the trial court should not consider jury verdicts from other cases and that adult children could not recover for lack of consortium. *Id.* at 154-55.

On August 8, 2013, the trial court entered findings of fact, conclusions of law, and a judgment awarding $2,048,975.94 in damages to Gerald's estate and its beneficiaries. CP at 3359-66.[10]

Munce appeals.

## ANALYSIS

Munce designates five trial court orders in his notice of appeal: (1) the July 2, 2009 order denying his motion to quash notice of deposition of Clarence Munce; (2) the January 22, 2010 findings of fact, conclusions of law, and sanction order; (3) the

---

[9] We assume that this refers to the court's earlier instructions to Munce about limiting his arguments to legal matters. VRP (Aug. 5, 2013) at 41-42.

[10] This award included (1) $750,000 in general damages to Rickey, (2) $750,000 in general damages to Cavar, (3) $400,000 for Gerald's pre-death pain and suffering, anxiety, emotional distress, and humiliation; (4) $132,267 in economic losses to Gerald's estate, plus $6,424.16 in funeral expenses; and (5) $10,284.78 in statutory costs and attorney fees. CP at 3365.

February 12, 2010 amended findings of fact, conclusions of law, and sanction order; (4) the July 2, 2013 order of default, and (5) the August 8, 2013 revised findings of fact, conclusions of law, and judgment. CP at 3461-63. He also challenges the trial judge's failure to recuse himself from the reasonableness hearing.

I.   The Trial Court Properly Rejected Munce's Argument Against Being Compelled to Submit to a Deposition

Munce first challenges the validity of the trial court's July 2, 2009 order requiring him to submit to a deposition. He claims that this order was improper because the court found him incompetent to stand trial in the criminal case against him and because his Fifth Amendment objections to the deposition questions were "appropriate." Appellant's Amended Opening Br. at 14. Munce fails to prove that the trial court was obligated to assess his competency before ordering him to a discovery deposition. The Fifth Amendment issue was previously determined by this court.

A. No Competency Determination Is Required Before A Discovery Deposition

In challenging the 2009 order, Munce argues, "Instead of seeking his deposition, respondents should have noted a competency hearing where the Trial Court could evaluate Mr. Munce first hand, take medical testimony, etc., to determine if the presumed incompetence had passed." Appellant's Amended Opening Br. at 22.

Munce cites no authority requiring the court to determine competency before permitting a discovery deposition to go forward. CP at 3485. If Gerald's estate sought to offer the deposition at trial, the trial court would need to determine Munce's competency. *State v. Moorison*, 43 Wn.2d 23, 30-31, 259 P.2d 1105 (1953); *Sumerlin v. Dep't of Labor & Indus.*, 8 Wn.2d 43, 48, 55-57, 111 P.2d 603 (1941), *overruled in part on other grounds*, *Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 39, 323 P.2d 241 (1958). But because the issue here is discovery, Munce's argument fails.

Munce cites *State v. Avila*, 78 Wn. App. 731, 737, 899 P.2d 11 (1995) (per curiam), to argue that his incompetence made his deposition unlawful. Reply Appellant's Amended Opening Br. at 16-17. But, unlike this case, *Avila* involved a determination of whether a child witness was competent to serve as a witness at trial; *Avila* did not concern a determination of competency before taking a discovery deposition.

Munce also cites *State v. Smith*, 97 Wn.2d 801, 650 P.2d 201 (1982), arguing, "He had been judged incompetent and was presumed such until a subsequent determination to the contrary." Appellant's Amended Opening Br. at 14. But *Smith* did not involve a discovery deposition. Rather, it involved the admission of testimony at trial.

Munce also cites *State v. Moorison*, 43 Wn. 2d 23, 30-31. Appellant's Amended Opening Br. at 15, 21, 22. But as this court's commissioner explained when denying discretionary review of the trial court's order directing Munce to submit to a deposition, *Moorison* addressed a witness's competency to testify at trial. CP at 3485-86. The commissioner stated correctly in the order denying discretionary review, "It may indeed be true that Munce was incompetent at the time of his deposition, and had he provided any testimony, the trial court would have addressed that issue when and if the testimony was offered as evidence at trial." CP at 3486. Thus, *Moorison* does not support Munce's argument here.

Munce fails to show that the trial court needed to determine his competency before ordering him to deposition. The first trial court did not err when it required him to submit to a deposition.

### B. Munce's Fifth Amendment Argument Is Barred By the Law of the Case Doctrine

In challenging the 2009 order, Munce also claims, "As to the Fifth Amendment, there was no argument below Mr. Munce was not facing criminal jeopardy. If any of Mr. Munce's Fifth Amendment invocations were inappropriate the Trial court's duty was to overrule them and compel answers." Appellant's Amended Opening Br. at 20.

This seems to be an argument that Munce properly asserted the Fifth Amendment at his deposition. We decline to review this argument under the law of the case doctrine, discussed below. Our prior decision on discretionary review necessarily found that the trial court's sanctions for discovery abuse were justified.

II. The First Trial Court's Rulings on The 2010 Orders Are Not Properly before This Court

Munce also challenges the first trial court's findings of fact, conclusions of law, and sanction orders entered in 2010. This was the order that originally struck his answer and affirmative defenses. Munce claims that in our discretionary review of this case "The merit of whether the sanction order was error was not before the Court. . . . The only issue on respondents' motion for discretionary review . . . was if a subsequent judge (Stoltz) erred amending Judge Larkin's sanction Order," and, hence, we should decide the legality of the sanction order for the first time now. Appellant's Reply Br. at 8. Gerald's estate, in contrast, contends that the law of the case doctrine precludes our review of these orders. Resp'ts' Opening Br. at 27. We agree with Gerald's estate and decline to review Munce's challenges to these orders.

Under the law of the case doctrine, "'questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" *Folsom v. County of Spokane*, 111 Wn.2d

256, 263, 759 P.2d 1196 (1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)). We apply the law of the case doctrine "'to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.'" *State v. Harrison*, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (quoting 5 AM. JUR. 2d *Appellate Review* § 605 (2d ed. 1995)).

In 2013, we ruled on discretionary review that the proper sanction for Munce's discovery abuse was the striking of Munce's answer, including his affirmative defenses and counterclaims. *Rickey*, 2013 WL 1164068, at *1. That previous ruling constitutes the law of the case.

We may review the propriety of an earlier decision in the same case and, where justice would best be served, decide the case on the basis of the law at the time of later review, despite the law of the case doctrine. RAP 2.5(c)(2). The law of the case doctrine is discretionary; we usually reconsider a decision only where (1) the decision is "clearly erroneous" and would work a "manifest injustice" to one party if the decision were not set aside or (2) where there has been an "intervening change in controlling precedent" between the time of trial and appeal. *Roberson v. Perez*, 156 Wn.2d 33, 42, 123 P.3d 844 (2005).

Munce establishes neither that our previous decision on discretionary review was clearly erroneous nor that an intervening change in the law occurred since that decision. Therefore, our previous ruling on his challenge to the trial court's 2010 orders constitutes the law of the case and we do not revisit it.

III.    The Default Order Was Improper

Munce also appeals the trial court's default order. A motion for default may be made when "a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend." CR 55(a)(1). As a policy matter, courts prefer to resolve disputes on their merits and do not favor default judgments. *Little v. King*, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). The court balances this policy against an interest in an "organized, responsive, and responsible judicial system where litigants . . . comply with court rules." *Id*. We will not disturb the trial court's decision on a motion for default unless the decision "was manifestly unreasonable, based on untenable grounds or untenable reasons." *Mecum v. Pomiak*, 119 Wn. App. 415, 422, 81 P.3d 154 (2003) (citing *Batterman v. Red Lion Hotels, Inc.*, 106 Wn. App. 54, 58, 21 P.3d 1174 (2001)).

The trial court entered partial summary judgment on liability, purported to deny summary judgment on proximate cause, and then, following remand from this court—but without an explicit decision from this court on whether we affirmed or reversed the entry of partial summary judgment—entered an order of default.

We agree with Munce that the trial court erred in entering the default order. As discussed below, the trial court's partial summary judgment on liability followed from discovery sanctions that were properly entered and entitled Munce to a jury trial on damages. Its subsequent order of default was not justified by any further discovery violation by Munce. In context, that default judgment and the trial court's virtual deprivation of Munce's right to participate in the damages hearing amounted to an additional sanction—but it was a sanction for which there was no separate *Burnet* inquiry. *See Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).[11]

### A. The Second Trial Court's Partial Summary Judgment on Liability Remained Intact Following Remand

Munce argues that the trial court erred by entering the default order. He argues in part that the default order "is fatally flawed because Judge Larkin [second trial court judge] already explicitly did not order default, Judge Stolz [trial court judge on remand] did not so order and in fact denied it and the Court of Appeals

---

[11] In *Burnet*, our Supreme Court held that before imposing one of the harsher remedies permitted under CR 37(b) as a sanction for a discovery violation, the trial court must explicitly consider whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the violation substantially prejudiced the opponent's ability to prepare for trial. 131 Wn.2d at 494.

remanded the matter for trial post discretionary review." Appellant's Amended Opening Br. at 31-32.

We basically agree. We also agree that we must return to the original trial court's summary judgment ruling to determine the propriety of the default order.

As discussed above, the first trial judge in 2010 imposed discovery sanctions striking Munce's answer, including his affirmative defenses and counterclaims. CP at 2506. The second trial judge in 2011 said that it reinstated Munce's answer and affirmative defense, CP at 2459, granted summary judgment on the "liability" component of Gerald's estate's claims, but denied summary judgment on "proximate cause." These statements are logically inconsistent because causation is an element of liability. In context, however, by stating that "proximate cause" was still at issue, the second trial court appeared to be preserving the issue of damages—not the issue of whether Munce's gunshot killed Gerald—for trial.

We then granted discretionary review of that second trial court's order reinstating Munce's answer, including his claims and defenses, and granting in part and denying in part summary judgment. In March 2013 we reversed that revision of the original court's discovery sanction order and remanded "for trial." We ordered the trial court on remand to preclude Munce from presenting his previously stricken answer and contributory negligence affirmative defense. *Rickey*, 2013 WL 1164068, at *1. But our ruling did not explicitly address the propriety of the grant of the partial

summary judgment on "liability." At the same time, however, we treated the second trial court's summary judgment order as a *grant* of summary judgment on liability—and, of course, the elements of liability include duty, breach, and causation. We left that intact:

> Even though the [first trial court's] ruling deprived Munce of his affirmative defenses, there remained for trial at that point the issue of liability and damages. And even if entry of a default judgment might arguably have been an option when the second judge later *granted Gerald's estate's motion for summary judgment on the issue of Munce's liability*, the issue of damages, at least, still remained for trial.

CP at 2465 (emphasis added). This confirms that the trial court entered summary judgment in Gerald's estate's favor on liability and we left that order intact on discretionary review, leaving open only "the issue of damages."

### B. The Trial Court Entered an Order of Default Following Remand, Despite No Further Defense Failure or Violation

Based on our decision on discretionary review, the trial judge indicated—and we agree—that the summary judgment ruling from the second trial judge entered on June 10, 2011, still controlled on the liability element. VRP at 14 (June 14, 2013) ("Well I don't think you have to prove negligence based on what's happened and the decisions that I've made. I'm just saying the case needs to go back for damages and that's the only issue.").

Although the order of summary judgment on liability remained intact following remand, Gerald's estate moved for an order of default on Munce's

23

liability. In June 2013, the trial court held a hearing on that motion for default. The trial court granted the motion for an order of default on July 2, 2013. CP at 3512-13. That court indicated that it was entering the order under CR 55, which governs the entry of default judgments, not under CR 37, which governs discovery sanctions. CP at 2018, 2493, 2597; *see* CP 3513 (It Is Hereby ORDERED, ADJUDGED AND DECREED that Defendant Clarence G. Munce, having his Answer stricken as a discovery sanction, is in default, and an Order of Default shall be and is hereby GRANTED in the above-entitled action).

## C. The Default Constitutes a Sanction

Munce argues that the default order "is the direct descendent of the original sanction order: it is a discovery sanction. The Trial Court was bound to work the Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494 (1997) factors ordering default in July 2013 as it was when it entered the original sanction order." Appellant's Amended Opening Br. at 31.

We must analyze the substance of the trial court's order, not just its form. Under CR 55, a party may move for an order of default where the opposing party fails to appear, plead, or defend. CR 55(a)(1). A party appears when it files a notice of appearance, applies for an order, or submits responsive pleadings, such as an answer. RCW 4.28.210. To make an appearance, "mere intent to defend, whether shown before or after a case is filed, is not enough; the defendant must go beyond

24

merely acknowledging that a *dispute* exists and instead acknowledge that a dispute exists *in court*." *Morin v. Burris*, 160 Wn.2d 745, 756, 161 P.3d 956 (2007). And if the party opposing the motion for default has appeared, that party "may respond to the pleading or otherwise defend at any time before the hearing on the motion." CR 55(a)(2).

In this case, Munce appeared. His answer was stricken. But his notice of appearance, CP at 2468, was not. And he participated in the proceedings. Thus, despite the trial court's previously affirmed decision to strike his answer, defenses, and counterclaims, Munce both manifested an "intent to defend" and "acknowledge[d] that a dispute exist[ed] in court." *Morin*, 160 Wn.2d at 756.

Thus, this could not have been a proper CR 55 default order.

We therefore address whether it was proper under CR 37, instead, even though the trial court disclaimed reliance on that rule. A trial court can certainly enter default as a sanction under CR 37 if the prerequisites to imposing such a severe sanction are satisfied. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (upholding entry of default judgment as a sanction).

But the first trial court had already imposed one sanction as a result of the defense discovery violations—it struck the answer, affirmative defenses, and counterclaims. The first trial court completed a full *Burnet* inquiry before striking those responsive pleadings, concluded that that drastic remedy was necessary, CP at

2506-07, and entered an order finding that that sanction sufficed. CP at 2544-58. It also specifically ruled that the even more drastic remedy of default was *not* necessary to address the violations. CP at 2554 ("The Court shall not enter an order of default which would be tantamount to a directed verdict on the issue of liability.").

No significant change occurred between the date of affirmance of those sanctions up to and including entry of partial summary judgment, and the date of the subsequent default order; there was no further violation or further failure to defend. The entry of default thus effectively functioned as an additional sanction unjustified by the first trial court's *Burnet* sanctions analysis.[12] To the extent that the trial court intended to enter a default judgment, that judgment violated *Burnet* and we would vacate it.[13]

---

[12] Munce also states, "To obtain the default order, respondents argued the answer was stricken by the sanction order thus the allegations of the complaint were admitted. That was false: only affirmative defenses and counterclaims were struck." Appellant's Amended Opening Br. at 26. We do not address this claim. In our previous review of this case, we ordered the trial court on remand to preclude Munce "from presenting his previously stricken answer and contributory negligence affirmative defense." *Rickey*, 2013 WL 1164068, at *4. Munce cannot relitigate this issue. *See Folsom*, 111 Wn.2d at 263.

[13] While we review this for harmless error, *Jones v. City of Seattle*, 179 Wn.2d 322, 356, 314 P.3d 380 (2013), this error was clearly harmful: it contradicted the original trial court's express ruling that a default order was unnecessary to address the violations and it deprived Munce of virtually all of his rights.

Because we vacate the trial court's default order, we do not resolve the issue of Munce's entitlement to a jury trial on damages following default.

### IV. Following Summary Judgment on Liability, Munce Had a Right to Trial on Damages

Without the improper default order, Gerald's estate has a proper order of summary judgment on liability, leaving open the issue of damages. The right to a jury trial clearly extends to the element of damages. *Sofie*, 112 Wn.2d at 638. Therefore, we vacate the damages award and remand for a trial on Gerald's estate's damages,[14] without the unjustified limitations that the trial court applied previously in the CR 55 hearing.[15]

### V. The Trial Judge Did Not Abuse His Discretion By Denying the Request for Recusal

Finally, Munce claims that the judge who presided over the reasonableness hearing, Judge Garold Johnson, should have recused himself. Appellant's Amended

---

[14] We therefore do not separately address Munce's additional arguments that the amount of damages awarded constituted an abuse of discretion.

[15] To be sure, a party seeking a jury trial on damages must satisfy procedural prerequisites. For example, CR 38 requires a party to file a jury demand "[a]t or prior to the time the case is called to be set for trial." A party who fails to comply with the requirements of CR 38 for filing a jury demand waives the right to a trial by jury. CR 38(d). The record contains no defense jury demand in this case. Gerald's estate filed the only "jury demand" noted on the docket. But neither party has mentioned that in this appeal. Thus, the trial court may address this issue on remand.

Opening Br. at 46. He argues, "Judge Johnson had a direct conflict of interest, called to his attention, that while in private practice his firm by one of his partners directly represented the decedent's children (plaintiffs) in a directly related matter." *Id.* In 2010, while Judge Johnson was in private practice, his law partner, Peter Kram, represented Munce's granddaughters, Kristy Rickey and Kelley Cavar, in petitioning for guardianship of Munce's person and property. Appellant's Reply Br. at A62-70.

A judge whose impartiality might reasonably be questioned must recuse himself or herself from hearing a matter. *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 136-37, 252 P.3d 406 (2011) (citing *In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009)). The determination of a judge's impartiality is objective and assumes that a reasonable person knows and understands all of the relevant facts. *Id.* at 137 (citing *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)). The party moving for recusal must demonstrate the judge's prejudice against him or her. *In re Parentage of J.H.*, 112 Wn. App. 486, 496, 49 P.3d 154 (2002) (citing *In re Marriage of Farr*, 87 Wn. App. 177, 188, 940 P.2d 679 (1997)). Our cases have held that recusal is within the trial court's discretion. *J.H.*, 112 Wn. App. at 496 (citing *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 840, 14 P.3d 877 (2000)). Following *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009), however, it is now clear that the Due Process Clause requires an objective inquiry

into whether recusal is required and review is de novo, not for abuse of discretion. U.S. CONST. amend. XIV.

Judge Johnson declined to recuse himself when Munce raised this issue during the reasonableness hearing. Judge Johnson explained,

> Mr. Kram and I certainly did sit down and talk about this case . . . . He wasn't asking me for my advice, just kind of running things back and forth a bit as we had a tendency to do in those days. And why I recall this case is because it had some press notoriety. . . .
>
> I don't think, though, that the factual questions that we would have discussed, which was not the amount of damages, more of simply the process, itself, was really the issue. . . .
>
> At this point I can't think of a reason why I cannot be fair on the issue of damages, I really can't. So I'm not going to recuse myself.

VRP (Aug. 5, 2013) at 31-32.

Munce cites Code of Judicial Conduct Canon 2.11(A)(6)(a), which requires a judge to disqualify himself or herself in a proceeding in which there might be a reason to question the judge's impartiality, including when the judge "served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer or a material witness in the matter during such association." Here, Judge Johnson's former law partner did not participate substantially in *this* matter. The record indicates that Kram was involved only in the appointment of a guardian for Munce. Further, although Gerald's estate requested $20 million in damages, Judge Johnson awarded $2,048,975.94. CP at 3514-21; VRP (Aug. 5,

29

2013) at 151. Munce points to no facts in the record showing a reason to question Judge Johnson's impartiality.

Munce also cites *Diimmel v. Campbell*, 68 Wn.2d 697, 414 P.2d 1022 (1966), which is not on point. In *Diimmel*, the trial judge granted Campbell's motion for judgment notwithstanding the verdict in a suit to quiet title to land. *Diimmell*, 68 Wn.2d at 698. Apparently, the judge's former law partner wrote a letter to Mr. Diimmel a number of years earlier reaching the same conclusion as the judge. 68 Wn.2d at 698-99. Diimmel then moved for a new trial, arguing that the court prejudged the case. *Id.* The trial court granted the motion on being shown the letter, although the court stated it "'ha[d] no independent recollection of the letter or the contents thereof and ha[d] no prior knowledge of the facts involved in said action'" when it made its decision. *Id.* at 699. The Supreme Court held that the trial court did not abuse its discretion when it granted the motion for the new trial. *Id.* Significantly, the opinion does not hold that it would have been an abuse of discretion *not* to grant the motion, and thus the case does not support Munce's contentions.

Munce fails to demonstrate that Judge Johnson, when Kram represented Rickey and Cavar, knew facts relevant to determining their damages in this tangential case. He does not present any facts suggesting a reason to question Judge Johnson's impartiality, or that his presiding over the reasonableness hearing

prejudiced Munce. Munce fails to show that Judge Johnson abused his discretion when he declined to recuse himself from the reasonableness hearing.

## ATTORNEY FEES

Gerald's estate requests costs and attorney fees under RAP 18.9 "because defendant's appeal is absolutely devoid of merit." Resp'ts' Opening Br. at 52. RAP 18.9(a) authorizes an award of terms or compensatory damages against a party who uses the appellate rules "for the purposes of delay, files a frivolous appeal, or fails to comply with [the] rules." Munce prevailed on one of his key arguments. It necessarily follows that his appeal is not frivolous. We decline to award costs and fees under RAP 18.9.

Gerald's estate also requests reasonable attorney fees under RAP 18.1, CR 26(g), CR 36, and CR 37.[16] Resp'ts' Opening Br. at 51-52. We may award attorney fees under CR 37(c) as an additional sanction if the appeal of the trial court's sanctions is frivolous or for purposes of delay. *Rhinehart v. KIRO, Inc.*, 44 Wn. App. 707, 710-11, 723 P.2d 22 (1986). We may award attorney fees CR 26(g) if the

---

[16] CR 26 permits an award of attorney fees for resisting discovery. CR 36 pertains to requests for admission. CR 37(a)(4) states that if a motion for an order to compel discovery is granted "[T]the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or **attorney** advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including **attorney fees**, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."

reason for the appeal is a discovery violation leading to the sanction of attorney fees against counsel. *Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc.*, 168 Wn. App. 710, 718-19, 282 P.3d 1107 (2012). Under RAP 18.1(a), "[f]ees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees." *Thompson v. Lennox*, 151 Wn. App. 479, 491, 212 P.3d 597 (2009) (citing *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985)).

The trial court awarded $10,284.78 in statutory costs and attorney fees to Gerald's estate under RCW 4.84.010, as requested. CP at 3269-71; 3515, 3520. But the trial court did not impose attorney fees as a sanction for Munce's discovery violations. And, as explained above, Munce's appeal is neither frivolous nor for purposes of delay. *Rhinehart*, 44 Wn. App. at 711. Consequently, none of the rules that Gerald's estate cites warrant an award of attorney fees on appeal.

## CONCLUSION

Munce fails to show that the trial court needed to determine his competency before ordering him to deposition. We decline to revisit Munce's claims related to the trial court's 2010 orders imposing sanctions on him. The trial court's order of default, denial of the right to a jury trial, and limitations on Munce during the damages hearing all constituted improper sanctions. We affirm in part and reverse the order of default and the damages order that followed, and remand for a jury trial

32

on damages in which Munce will be permitted to present evidence and cross-examine witnesses.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Gordon McCloud, J.P.T.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.